92 P.3d 421

**STATE of Arizona, Appellee,**

v.

**Oberlin CABANAS–SALGADO, Appellant.**

**No. 1 CA–CR 02–0456.**

Court of Appeals of Arizona,
Division 1, Department E.

Oct. 30, 2003.

Review Denied May 25, 2004.

Terry Goddard, Attorney General, By
Randall M. Howe, Chief Counsel, Criminal
Appeals Section and Robert A. Walsh, Assis-
tant Attorney General, Phoenix, Attorneys
for Appellee.

Robert W. Doyle, Phoenix, Attorney for
Appellant.

**OPINION**

GEMMILL, Judge.

¶1 We hold that the State, in a felony
murder prosecution based on the underlying
felony of transportation of cocaine for sale,
does not have to prove that the defendant
knew that the amount of cocaine being trans-
ported exceeded the statutory threshold
amount.

¶2 Defendant Oberlin Cabanas–Salgado
was convicted of first degree felony murder,
conspiracy to transport a narcotic drug (co-
caine) for sale, transportation of a narcotic
drug (cocaine) for sale, and misconduct in-
volving weapons. *See* Ariz.Rev.Stat.
("A.R.S.") §§ 13–1105(A)(2) (Supp.2002); 13–
1003(A) (2001); 13–3408(A)(7) (2001); 13–
3102(A)(8) (Supp.2002). The underlying felo-
ny supporting the felony murder conviction
was transportation of cocaine for sale. Caba-
nas–Salgado contends the trial court erred
by ruling that the State did not have to prove
that he knew the amount of the cocaine
exceeded the statutory threshold amount.
He also argues that the court erred by find-
ing that his post-arrest statements to police
officers were voluntary. We disagree and

affirm the convictions and sentences imposed.[1]

## FACTS AND PROCEDURAL HISTORY

¶ 3 The charges arose from Cabanas–Salgado's involvement in a cocaine-dealing operation with co-defendants Flores–Zevada and Cabanas–Salgado's cousin, Petrona–Cabanas. Cabanas–Salgado waived his right to a jury trial and, in exchange for dismissal of the State's notice of intent to seek the death penalty, stipulated to the admissibility of the transcripts from Flores–Zevada's trial arising from the same incident.

¶ 4 The cocaine sales occurred in a white Lincoln in the parking lot of a bar. Police officers received a report of these activities and responded to the parking lot. The officers contacted Cabanas–Salgado and one of the co-defendants and ordered them to leave.

¶ 5 Cabanas–Salgado and a co-defendant later returned to the parking lot and were joined by three other individuals. Officers Ivankovich and Atkinson, in separate police cars, observed them contacting occupants of cars that were driving in and out of the lot. It appeared to Ivankovich that they were selling drugs.

¶ 6 During their surveillance, Ivankovich was called away and Atkinson continued observing the activity. Ivankovich listened to Atkinson's transmissions on a police radio frequency. He heard Atkinson say that the Lincoln was driving away and that he was following.

¶ 7 Cabanas–Salgado testified that he sat in the back seat of the car, with Flores–Zevada driving and Petrona–Cabanas in the front passenger seat. During the ride, someone in front said a police officer was following them. Flores–Zevada stopped the car, got out, and ran. Cabanas–Salgado testified he also fled, and heard gunshots behind him as he ran into a nearby building where he

was later arrested. He said the shooter had to have been one or both of his companions.

¶ 8 One of the shots struck Officer Atkinson in the head and killed him. Officers seized forty-three grams of cocaine from the glove box of the Lincoln.

¶ 9 The trial court found Cabanas–Salgado guilty. At sentencing, the court noted that Cabanas–Salgado was a minor participant compared to Flores–Zevada, who was the chief of the drug operation, and Petrona–Cabanas, who shot Atkinson. The court sentenced Cabanas–Salgado to a life term with possibility of parole for felony murder, ten years for conspiracy to transport cocaine for sale, ten years for transportation of cocaine, and eight years for misconduct involving weapons, all to be served concurrently.

¶ 10 Cabanas–Salgado filed a timely appeal and we have jurisdiction under Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2003), 13–4031 (2001), and 13–4033(A)(1) (2001).

## KNOWLEDGE THAT THE COCAINE EQUALLED OR EXCEEDED THE THRESHOLD AMOUNT

■■■ ¶ 11 Cabanas–Salgado asserts on appeal, as he did at trial, that the State must prove that he knew the amount of cocaine in the glove box exceeded the threshold amount in order to sustain a conviction for felony murder based on participation in transporting cocaine for sale.[2] Because this contention requires us to interpret and apply the felony-murder and drug-transportation statutes, we apply a *de novo* standard of review. *See State v. Morrison*, 203 Ariz. 489, 490, ¶ 4, 56 P.3d 63, 64 (App.2002).

■■■ ¶ 12 Felony murder in Arizona is first-degree murder. A.R.S. § 13–1105. Felony murder differs from traditional first-degree murder, however, because the State

---

1. Because only our resolution regarding the elements the State must prove in a felony murder prosecution merits publication, we have addressed in a separate Memorandum Decision the trial court's ruling that the defendant's post-arrest statements to the police were voluntary. *See* Ariz. R. Sup.Ct. 111(h); Ariz. R.Crim. P. 31.26.

2. Section 13–3401(36) sets forth "threshold amounts" of various unlawful substances such as heroin, cocaine, PCP, and methamphetamine. The statutory threshold amount for cocaine is nine grams. A.R.S. § 13–3401(36)(b) (Supp. 2002).

does not have to prove the specific intent to support a first-degree murder conviction. *State v. McLoughlin,* 139 Ariz. 481, 485–86, 679 P.2d 504, 508–09 (1984). The *mens rea* for felony murder is supplied by the culpable mental state required for the underlying felony. *See State v. Arias,* 131 Ariz. 441, 444, 641 P.2d 1285, 1288 (1982).

¶ 13 Our first-degree murder statute, § 13–1105, provides in relevant part:

A. A person commits first degree murder if:

. . . .

2. Acting either alone or with one or more other persons the person commits or attempts to commit ... narcotics offenses under § 13–3408, subsection A, paragraph 7 that equal or exceed the statutory threshold amount for each offense or combination of offenses, ... the person or another person causes the death of any person.

. . . .

B. Homicide, as prescribed in subsection A, paragraph 2 of this section, requires no specific mental state other than what is required for the commission of any of the enumerated felonies.

A.R.S. § 13–1105(A)(2), (B) (Supp.2002).

¶ 14 Based on this statutory language, felony murder requires no specific mental state other than what is required for the underlying felony. *State v. Dickens,* 187 Ariz. 1, 22, 926 P.2d 468, 489 (1996); *State v. Herrera,* 176 Ariz. 21, 30, 859 P.2d 131, 140, (1993); *State v. McLoughlin,* 139 Ariz. 481, 485–86, 679 P.2d 504, 508–09 (1984).

■ ¶ 15 The underlying felony in this case, transportation of cocaine for sale, has a requisite mental state of knowledge:

A person shall not *knowingly* ... [t]ransport for sale, import into this state, offer to transport for sale or import into this state, sell, transfer or offer to sell or transfer a narcotic drug.

A.R.S. § 13–3408(A)(7) (2001) (emphasis added). To be convicted under this statute, a person must knowingly transport a narcotic drug for sale. The State need not prove, however, that the person knew the *amount*

of the narcotic drug being transported for sale.

¶ 16 Cabanas–Salgado argues that §§ 13–1105(A) and 13–3408(A)(7), when read together, require that the State prove the defendant knew that the amount of the narcotic drug being transported for sale exceeded the threshold amount. He relies on A.R.S. § 13–202(A) (2001), which states:

If a statute defining an offense prescribes a culpable mental state that is sufficient for commission of the offense without distinguishing among the elements of such offense, the prescribed mental state shall apply to each such element unless a contrary legislative purpose plainly appears.

According to Cabanas–Salgado, because § 13–3408(A)(7) requires a knowing state of mind, § 13–202(A) applies the same mental state to the threshold requirement found in § 13–1105(A)(2). This argument overlooks the plain language of § 13–1105(B) that felony murder "requires no specific mental state other than what is required for the commission of any of the enumerated felonies." Because § 13–3408(A)(7) does not require the State to prove that the defendant knew the amount of the drug being transported, neither does § 13–1105(B) import such a requirement for felony murder. Section 13–202(A) does not apply because "a contrary legislative purpose plainly appears" in § 13–1105(B). *See Rineer v. Leonardo,* 194 Ariz. 45, 46, ¶ 7, 977 P.2d 767, 768 (1999) (unless ambiguous, statutes must be interpreted according to their plain meaning).

¶ 17 Additionally, we note that § 13–202(A) applies if "a statute defining an offense prescribes a culpable mental state that is sufficient for commission of the offense without distinguishing among the elements of such offense." Section 13–202(A) applies, therefore, to statutes such as § 13–3408(A)(7) so that the defendant must "knowingly" commit each element of the offense. In contrast, our felony murder statute, § 13–1105(A)(2) and (B), does not "prescribe[ ] a culpable mental state that is sufficient for commission of the offense without distinguishing among the elements of such offense." Instead, § 13–1105(B) states that felony murder "requires

198

no specific mental state other than what is required" for the underlying felony.

¶ 18 For these reasons, § 13–202(A) is not applicable to § 13–1105(A)(2) and does not support Cabanas–Salgado's argument that the State must prove that he knew the amount of cocaine being transported for sale exceeded the statutory threshold amount.

¶ 19 The trial court found that Cabanas–Salgado knowingly transported cocaine for sale, thereby establishing his guilt under § 13–3408(A)(7). Because Officer Atkinson was killed by a shot fired during the commission of that offense, Cabanas–Salgado is also guilty of felony murder under § 13–1105(A)(2) and (B) if the amount of the cocaine being transported exceeded the threshold amount of nine grams.

¶ 20 The State had the burden of proving that the amount of cocaine exceeded the threshold amount and did prove that forty-three grams of cocaine was found in the glove box of the Lincoln. All necessary elements of felony murder were proven.

¶ 21 Cabanas–Salgado cites *State v. Virgo*, 190 Ariz. 349, 352, 947 P.2d 923, 926 (App. 1997) and *State v. Aragon*, 185 Ariz. 132, 134, 912 P.2d 1361, 1363 (App.1995) in support of his argument that the State must prove not only the amount of the drug but also that he knew that the amount exceeded the threshold amount. *Virgo* and *Aragon*, however, do not support Cabanas–Salgado's conclusion. Those cases, addressing offenses involving marijuana, held that the amount of the marijuana is an element of the offense because differing amounts result in different offenses. *Virgo*, 190 Ariz. at 352, 947 P.2d at 926; *Aragon*, 185 Ariz. at 134, 912 P.2d at 1363. Those cases do not stand for the proposition that the State must prove that the defendant knew the amount of the drugs or marijuana involved.

¶ 22 Based on the unambiguous language of § 13–3408(A)(7), transportation of cocaine for sale does not require proof that the defendant knew the amount of the drug. Section 13–1105(A)(2) does not require a culpable mental state and § 13–1105(B) specifies that the culpable mental state required for the underlying felony is sufficient for felony murder. Section 13–202(A) is not applicable. We therefore hold that felony murder in this case does not require proof that Cabanas–Salgado knew that the amount of narcotic drugs exceeded the threshold amount.

## CONCLUSION

¶ 23 For these reasons and for the reasons set forth in the accompanying Memorandum Decision, we affirm Cabanas–Salgado's convictions and sentences.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and MAURICE PORTLEY, Judge.