160 P.3d 687

**In re ANDREW C.**

**No. 1 CA–JV 06–0079.**

Court of Appeals of Arizona, Division 1, Department A.

June 21, 2007.

---

Jeffery M. Zurbriggen, P.C. By Jeff Zurbriggen, Tempe, Attorney for Appellant.

Andrew P. Thomas, Maricopa County Attorney By Andrea L. Kever, Deputy County Attorney, Phoenix, Attorneys for Appellee.

## OPINION

BARKER, Judge.

¶ 1 The issue in this case is whether pre-paid educational fees are economic losses for purposes of restitution. We hold that they are and affirm.

### I.

¶ 2 Juvenile Andrew C. ("Andrew") appeals a restitution award ordered by the juvenile court. Andrew was adjudicated delinquent after he entered a plea agreement admitting to misdemeanor assault. As part of the plea agreement, Andrew agreed to pay restitution to the victim, not to exceed $500. The court later conducted a restitution and disposition hearing at which the juvenile court ordered $186 in restitution to be paid for the victim's pre-paid educational fees on the basis that it was an economic loss arising from the incident.[1]

¶ 3 At the restitution and disposition hearing, the victim testified that the assault caused him to miss the session of a culinary class he was to attend that day. The victim paid $2,800 for a six-week culinary class that consisted of fifteen class sessions. He therefore requested reimbursement for the value of the missed class, $186 ($2800 divided by fifteen equals $186). The victim indicated that his tuition, including that for the missed class, had been paid at the beginning of the semester. He further testified that he would not be reimbursed for the class, he was not able to make the class up, and that each class session was unique: "every day is a different ... thing that we learn in class."

¶ 4 The juvenile court held that the educational fees were an economic loss that resulted from the assault and entered an order of restitution for the value of the missed class. Andrew timely appealed the restitution order. See Ariz. R.P. Juv. Ct. 89. This court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 8–235 (Supp.2005).

### II.

¶ 5 Andrew contends that the educational fees were not an "economic loss" because they were pre-paid and the victim did not incur any additional costs for missing the class session. Andrew argues that the pre-payment was a "sunk cost at the time of enrollment" and that the only loss "was that of the educational process itself, which," Andrew contends, "is not economic." The dissent accepts Andrew's argument and asserts that the loss is one of *enjoyment*, for which a civil remedy may apply, but not economic, for which restitution in a criminal case is appropriate. The State asserts, and the trial court found, that the losses at issue are economic and restitution is appropriate. We agree.

¶ 6 We review a juvenile court's restitution order for an abuse of discretion. *In Re Erika V.*, 194 Ariz. 399, 400, ¶ 2, 983 P.2d 768, 769 (App.1999); *Maricopa County Juv. Action No. JV–128676*, 177 Ariz. 352, 353, 868 P.2d 365, 366 (App.1994). We consider the facts in the light most favorable to upholding the decision. *See In re Julio L.*, 197 Ariz. 1, 2–3, 6, 3 P.3d 383, 384–85 (2000). We review issues of statutory and constitutional construction on a de novo basis. *Univ. Med. Ctr. Corp. v. Dep't of Revenue*, 201 Ariz. 447, 450, ¶ 14, 36 P.3d 1217, 1220 (App.2001).

¶ 7 To properly consider Andrew's claims we must set forth the constitutional and stat-

---

1. The court also ordered other restitution which is not at issue on appeal.

utory parameters of restitution and those pertinent cases construing those provisions. We then turn to the specific provisions and analysis of the term "economic."

## III.

¶ 8 The juvenile court's authority to order restitution stems both from the Arizona Constitution and statutes. The Arizona Constitution provides that it is a victim's right "[t]o receive prompt restitution from the person or persons convicted of the criminal conduct that caused the victim's loss or injury." Ariz. Const. art. 2, § 2.1(A)(8). When "a juvenile is adjudicated delinquent, the court, after considering the nature of the offense ... shall order the juvenile to make full or partial restitution to the victim of the offense for which the juvenile was adjudicated delinquent...." A.R.S. § 8–344 (Supp.2006).

■ ¶ 9 In applying the statutory and constitutional scheme, the Arizona Supreme Court has provided a three-part test. *State v. Wilkinson,* 202 Ariz. 27, 29, ¶ 7, 39 P.3d 1131, 1133 (2002). Restitution is appropriate for those losses that (1) are economic, (2) would not have occurred but for the juvenile's delinquent conduct, and (3) are directly caused by the delinquent conduct (e.g. not consequential damages). *Id.*

■ ¶ 10 "Arizona's statutory scheme requiring restitution in criminal cases is based on the principle that the offender should make reparations to the victim by restoring the victim to his economic status quo that existed before the crime occurred." *In re William L.,* 211 Ariz. 236, 239, ¶ 11, 119 P.3d 1039, 1042 (App.2005). As we have noted, "[t]his concept is commonly referred to as making the victim 'whole.'" *Id.* at ¶ 12, 119 P.3d 1039. "[T]he trial court has discretion to set the restitution amount according to the facts of the case *in order to make the victim whole.*" *In re Ryan A.,* 202 Ariz. 19, 24, ¶ 20, 39 P.3d 543, 548 (App.2002) (emphasis added); *see also State v. Reynolds,* 171 Ariz. 678, 681, 832 P.2d 695, 698 (App.1992) ("[A] trial court is required to determine the full amount of the victim's loss to make the victim whole."); *Pima County Juv. Action No. 45363–3,* 151 Ariz. 541, 541, 729 P.2d 345,

345 (App.1986) ("[T]he court also must consider the victim's loss in fashioning an order appropriate to a particular case.").

¶ 11 Frequently, a victim's loss can be measured by fair market value. *See State v. Ellis,* 172 Ariz. 549, 550, 838 P.2d 1310, 1311 (App.1992) ("in assessing restitution for a loss of personal property, the measure of the victim's full economic loss is the fair market value of the property at the time of the loss"). Other times, however, fair market value is not an appropriate measure for economic loss. *See William L.,* 211 Ariz. at 240, ¶¶ 14–17, 119 P.3d at 1043 (approving measures other than fair market value when necessary to establish restitution). The guiding principle is to "make the victim whole," to the extent permitted by the statutory and constitutional scheme. *Ryan A.,* 202 Ariz. at 24, ¶ 20, 39 P.3d at 548. That is the purpose of the three-part test from *Wilkinson,* to which we now turn.

## IV.

¶ 12 As noted, *Wilkinson* requires that the loss (1) "be economic," (2) "be one that the victim would not have incurred but for the defendant's criminal offense" and (3) be "directly cause[d]" by the delinquent conduct. 202 Ariz. at 29, ¶ 7, 39 P.3d at 1133.

¶ 13 Beginning with the second prong of the test, that prong is clearly satisfied because "but for" the delinquent conduct the victim would have been able to attend the class and there would have been no loss. As to the third prong of the test, there is likewise no question that the loss of the class session was directly caused by the delinquent conduct. The assault took place the same day as the class and prohibited the victim from attending the class.

¶ 14 Thus, under the *Wilkinson* test, the only factor that remains is whether the loss was "economic."

## V.

■ ¶ 15 The legislature has provided a statutory definition of "economic loss" applicable to restitution matters. A.R.S. § 13–105(14) (Supp.2006). When the legislature has defined a term we apply that definition.

*Sakrison v. Pierce,* 66 Ariz. 162, 170, 185 P.2d 528, 534 (1947) ("[I]t is a firmly established rule that definitions of terms given within the framework of a statute itself control and dictate the meaning of those terms as used in the statute."). If a definition still leaves unresolved questions, we turn to standard principles of statutory analysis to resolve them. · *Hughes v. Jorgenson,* 203 Ariz. 71, 73, ¶ 11, 50 P.3d 821, 823 (2002). The legislative definition of "economic loss" is as follows:

> "Economic loss" means any loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, lost earnings and other losses which would not have been incurred but for the offense. Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages.

A.R.S. § 13–105(14). We note that the legislature has defined some specific items that *are* economic ("lost interest, lost earnings"), some that *are not* economic ("losses incurred by [a] convicted person," "pain and suffering", "consequential damages"), and then simply defined an "economic loss" to be "any loss" not otherwise referenced. Thus, we consider that the phrase "any loss" means "any loss that is *economic*" and that the reference to "any loss" means that the legislature intends the term "economic" to be construed as broadly as that term permits.

¶ 16 Although a number of our cases apply the statutory definition of economic loss, none deal with the issue posed by equating "any loss" with "economic loss." *See, e.g., William L.,* 211 Ariz. at 239, ¶¶ 11–13, 119 P.3d at 1042; *State v. Guilliams,* 208 Ariz. 48, 51–52, ¶¶ 9–12, 90 P.3d 785, 788–89 (App. 2004); *In re Stephanie B.,* 204 Ariz. 466, 469, ¶¶ 10–13, 65 P.3d 114, 117 (App.2003). Nei-

ther does *Wilkinson* shed further light on how we should construe the term "economic loss" when described as "any loss." The primary focus of *Wilkinson* was on prong two and three of the test. Neither does the legislative history for § 13–105(14) provide further guidance.[2]

¶ 17 In circumstances such as these, it is appropriate to turn to established dictionaries to give meaning to terms used. *Sierra Tucson, Inc. v. Pima County,* 178 Ariz. 215, 220, 871 P.2d 762, 767 (App.1994) ("reference to established, respected dictionaries is appropriate in determining the commonly accepted meaning of words in a statute"). A common definition of "economic" is the following: "Of, relating to, or based on the production, distribution, and consumption of goods and services." Merriam Webster Collegiate Dictionary (10th Ed.2005). We hold that the breadth of this definition encompasses the breadth of the definition that the legislature intended when it determined that "economic loss" meant "any loss," except as otherwise defined. We adopt it and apply it here.

¶ 18 Using this definition of "economic," the pre-paid educational fees at issue clearly qualify. The inability to attend the culinary class certainly is one "relating to ... consumption of goods and services." In the language of the definition, the victim was unable to "consume" the "services" for which he had paid: the culinary class. In this case the "service" that the victim was precluded from consuming was the culinary class that he had purchased. The loss here was "economic," satisfying that prong of the *Wilkinson* test and the statutory definition. Thus, the trial court did not err when it ordered restitution in the amount of $186, which is the economic loss represented by missing one of fifteen class sessions when the overall cost of the course was $2800.[3] Once the three-

---

2. Subsection 14 of A.R.S. § 13–105, defining "economic loss," was added by Senate Bill 1232 of the 1986 legislative session. The bill was originally proposed by the Senate as establishing a Juvenile Probation Services Fund. The House of Representatives amended the bill to include various additions to Chapter 13, including the definition of "economic loss" in A.R.S. § 13–105(14). The judiciary committee recommended that the bill pass without comment. The legisla-

tive history, therefore, does not suggest a particular intent for the definition of "economic loss" beyond the express statutory language.

3. Just as it does not matter if only a portion of a car was damaged for the purposes of restitution, as contrasted with the vehicle being totaled, it does not matter here that only a portion of the course was missed rather than the entire course. If the statutory scheme is complied with and the

part test from *Wilkinson* was satisfied, the trial court had the responsibility to "make the victim whole," whether or not there was a fair market value that could be assigned to the loss. *William L.*, 211 Ariz. at 239, ¶¶ 12, 14–17, 119 P.3d at 1042; *Ryan A.*, 202 Ariz. at 24, ¶ 20, 39 P.3d at 548.

## VI.

¶ 19 Andrew and the dissent assert, however, that because the educational costs were "prepaid" they do not qualify as economic. The principle asserted by Andrew and the dissent is that a "fixed cost, paid prior to the assault" does not qualify for restitution as "the loss occurred *prior to the assault.* ... The only loss to the victim occurring after and resulting from the assault was a *loss of enjoyment* ... [which] is not compensable as restitution." *Infra* at ¶ 34. This logic is flawed.

¶ 20 We first note that whether goods or services are paid for in advance is not a factor under the statutory definition of "economic loss." The question is whether the loss is "economic"—not when it was paid for. What matters, in determining whether a loss is economic, is whether it is one "relating to, or based on the production, distribution, and consumption of goods and services." *Supra* at ¶ 17.

¶ 21 Frequently, hypothetical examples shed light on the viability, or lack thereof, of an asserted legal principle. Such is the case here. Assume you pre-paid $10,000, nonrefundable, for a ten-day cruise on the Mexican Riviera. You are assaulted the day before the cruise, and your injuries are such that you are unable to sail. Is there an economic loss of $10,000 or simply a non-economic loss

of enjoyment? Assume someone steals your tickets to the ASU–USC football game for which you previously paid $1000. You can now no longer attend the game. If the thief is caught, should restitution be considered for a $1000 economic loss or was there merely a non-economic loss of enjoyment?

¶ 22 We think the answer to each hypothetical is obvious. The losses pertain to the "consumption of ... services" for which the victim has paid in advance. Applying the definition derived from § 13–105(14), the losses are "economic." Prongs two and three from *Wilkinson* must still be met, but the fact that the payment was made prior to the criminal act does not make the loss "non-economic." Prong one of the test is satisfied. Although the dissent asserts that "[e]njoyment in and of itself is non-economic in nature," that is of no consequence when the event or services one seeks to enjoy were paid for in advance.[4]

## VII.

¶ 23 The dissent also suggests that there are constitutional reasons that would impede the trial court from entering this award. This is not so.

¶ 24 First, we note that this argument was not raised on appeal or asserted in the trial court. Generally, such an issue may not be considered on appeal. *Childress Buick Co. v. O'Connell*, 198 Ariz. 454, 459, ¶ 29, 11 P.3d 413, 418 (App.2000). We agree with the dissent, however, that in some circumstances it may be appropriate to address foundational legal issues that are either (1) dispositive of the case, or (2) necessary to accurately apply the law even though those issues have not been asserted or briefed. *See Stokes v.*

*Wilkinson* test is met, the victim is entitled to restitution for "the victim's loss or injury." Ariz. Const. art. 2, § 2.1(A)(8). There is no requirement that the loss be total or complete.

4. The dissent also asserts that three cases dealing with damaged vehicles support its proposition that monies paid "prior to the assault" cannot be an economic loss. *Infra* at ¶¶ 37–39, citing *William L.*, 211 Ariz. at 239–40, ¶¶ 9–14, 119 P.3d at 1042–43; *State v. Barrett*, 177 Ariz. 46, 864 P.2d 1078 (App.1993); *State v. Morris*, 173 Ariz. 14, 839 P.2d 434 (App.1992). We disagree. The cases are completely consistent with, and sup-

port, our holding. On their facts they simply do not address the situation here, where monies were paid *prior* to the crime and the crime directly caused the loss of the goods and services those funds purchased. Two of them, *William L.* and *Morris*, deal with whether monies paid or sought *after* the crime had occurred qualify as restitution. *William L.*, 211 Ariz. at 239, ¶ 9, 119 P.3d at 1042; *Morris*, 173 Ariz. at 18–19, 839 P.2d at 438–39. The third, *Barrett*, addresses whether there was sufficient evidence for asserted lost profits to qualify as restitution. 177 Ariz. at 46–47, 864 P.2d at 1078–79.

*Stokes,* 143 Ariz. 590, 592, 694 P.2d 1204, 1206 (App.1984) ("The exceptions to the general rule operate only where the facts of a particular case so warrant and the question is one of substantive law presenting no dispute as to the facts.") Having said that, the constitutional argument that the dissent makes here holds no sway.

¶ 25 The Arizona Constitution expressly provides that a victim has a right "[t]o receive prompt restitution from the person or persons convicted of the criminal conduct that caused the victim's loss or injury." Ariz. Const. art. 2, § 2.1(A)(8). As stated in *Wilkinson,* "[o]ur conclusion that the restitution statutes encompass only damages *directly caused by the criminal conduct involved* not only remains faithful to the statutory language, but also prevents the restitution statutes from conflicting with the right to a civil jury trial preserved by Arizona Constitution Article 2, Section 23." *Wilkinson,* 202 Ariz. at 29, ¶ 11, 39 P.3d at 1133 (emphasis added). The restitution award here was only for those losses "directly caused by the criminal conduct involved." *Id.* Thus, there is no constitutional impediment.

### VIII.

¶ 26 For the reasons set forth above, we affirm the restitution order entered in this case.

CONCURRING: G. MURRAY SNOW, Presiding Judge.

KESSLER, Judge, dissenting.

¶ 27 I respectfully dissent from the decision of the court because the alleged loss here had no pecuniary impact on the victim and was thus not an "economic" loss. While the victim could seek damages for his loss of enjoyment of the class in a separate civil action, both our statutory scheme and due

process considerations prohibit an award of non-economic damages as part of restitution.

¶ 28 It is undisputed that the victim paid the tuition for a culinary course in advance of the course and that he missed one day of class because of the delinquent act. It is also undisputed that, although the victim would not be reimbursed for the missed class, he did not incur any additional costs as a result of his absence and he completed the semester without having to make up the class. There was no evidence that missing the class had any subsequent monetary impact on the victim, such as additional tuition to make up the class, lost revenue by missing work to make up the class, or even in lost earning potential. In determining the loss resulting from Andrew's assault on the victim, the juvenile court and the majority have superimposed an economic value on a loss that is non-economic in nature and demanded Andrew reimburse that loss.

¶ 29 I disagree with the majority's approach to this question of statutory interpretation because restitution is reserved for true economic losses directly caused by the crime.[5] While the statutory definition of "economic loss" is broad,[6] the Arizona Supreme Court has limited the kind of losses subject to restitution to those that: (1) are economic, (2) would not have occurred but for the juvenile's delinquent conduct, and (3) are directly caused by the delinquent conduct. *Wilkinson,* 202 Ariz. at 29, ¶ 7, 39 P.3d at 1133. The loss here does not satisfy this test because it simply is not economic.

¶ 30 I agree with the majority's analysis that the statutory definition of economic loss leaves us little guidance in determining whether a loss is "economic." I further agree with the majority that, in the face of such ambiguity, we should resort to the common usage of the term, "economic," as cata-

---

5. The trial court typically has the discretion to apply the facts of the case to determine an appropriate restitution award. *Ryan A.,* 202 Ariz. at 24, ¶ 20, 39 P.3d at 548. This case, however, turns largely on a question of statutory interpretation, which this Court reviews de novo. *See State v. Cabanas–Salgado,* 208 Ariz. 195, 196, ¶ 11, 92 P.3d 421, 422 (App.2003).

6. Economic loss is defined by statute as "any loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, lost earnings and other losses which would not have been incurred but for the offense. Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages." A.R.S. § 13–105(14).

logued in dictionaries. I do not, however, ascribe to the majority's selection of a portion of a secondary definition to define a complex term. I believe this approach does not lead to an accurate portrayal of the commonly used, plain meaning of the term, "economic."

¶ 31 The adjective "economic" has evolved since its introduction to the English language during the sixteenth century. *See The Compact Edition of the Oxford English Dictionary, Vol. I* 831 (1971) ("OED"); Online Etymology Dictionary, http://www. etymonline.com/index.php?term= economy (last visited June 7, 2007) ("Online Etymology Dictionary"). It is derived from Greek and Latin terms for household management, and hence, its initial meaning was, "of or relating to a household or its management." *Definition of Economic—Merriam Webster Online Dictionary*, http://www.webster.com/ dictionary/economic (last visited June 7, 2007) ("Merriam Webster"); OED, *supra;* Online Etymology Dictionary, *supra.* Over time, this definition came to denote private income and expenditure. OED, *supra.* Around the late eighteenth century, following the publication of Adam Smith's *The Wealth of Nations,* the term "economic" became associated with the social science field of Economics. *See* OED, *supra;* Online Etymology Dictionary, *supra.* In this sense, the term can be said to mean, as aptly stated by the majority, "of, relating to, or based on the production, distribution, and consumption of goods and services," or "of or relating to an economy." Merriam Webster, *supra.* Thus, in addition to its relationship to the study of Economics, the accepted meanings of the adjective "economic" have come to include: "marked by careful, efficient, and prudent use of resources: thrifty;" "having practical or industrial significance or uses: affecting material resources;" and "profitable." Merriam Webster, *supra.*

¶ 32 In this array of meaning, a common thread may be detected: pecuniary interests and material resources. Common usage of the term "economic" then, has consistently related to pecuniary interests and material resources. While consumption of goods and services is subsumed in that usage, as the majority aptly points out, the consumption of goods and services does not subsume the entirety of the common understanding of the term "economic." In relying heavily upon one aspect of a broad term, the majority thereby redefines the term in a way not necessarily indicative of its common usage.

¶ 33 I therefore part with the majority's definition of the term "economic" in favor of a definition that better encompasses the common usage of the term; that is, involving pecuniary interests and material resources. Thus, I would hold that the statutory limitation of loss compensable through criminal restitution to *economic* loss evinces legislative intent that those losses must involve pecuniary interests and material resources.

¶ 34 The reimbursement of pre-paid tuition awarded in this case does not meet that criterion. The tuition for the culinary class was a fixed cost, paid prior to the assault. The victim paid to attend the class he missed *prior to the assault.* To the extent the victim experienced a loss involving his pecuniary interests or material resources, then, under the facts presented in this case, the loss occurred *prior to the assault.* There is no evidence the victim had to pay for anything associated with the class *after the assault,* nor is there any evidence that missing that class had any detrimental effect on the victim's pecuniary interests or material resources. The only loss to the victim occurring after and resulting from the assault was a *loss of enjoyment* of the class. Such a loss of enjoyment is not compensable as restitution in juvenile delinquency proceedings.

¶ 35 The majority contends that loss of enjoyment is compensable as a criminal restitution award. I disagree. Enjoyment in and of itself is non-economic in nature. It is the ability to participate in and derive pleasure from a given activity. *See Ogden v. J.M. Steel Erecting, Inc.,* 201 Ariz. 32, 39, ¶¶ 29–31, 31 P.3d 806, 813 (App.2001) (claim for loss of enjoyment of life compensates victim for subjective knowledge he can no longer engage in life's pursuits as well as objective loss of ability to participate in those pursuits); *Sheppard v. Crow–Barker–Paul No. 1 Ltd. P'ship,* 192 Ariz. 539, 549, ¶ 52, 968 P.2d 612, 622 (App.1998) (distinguishing claim for loss

of enjoyment of activity from loss of earning potential). While enjoyment in this sense certainly has value, that value is non-material and transcends pecuniary interests. It is therefore non-economic. The loss of enjoyment therefore is not subject to a criminal restitution award.[7]

¶ 36 The distinction between a loss of enjoyment and an economic loss is evident in this case. The enjoyment lost here was the victim's ability to participate in and derive pleasure from the class he missed. This, in and of itself is non-economic in nature. Based on the record presented, the only aspect of the course that involved pecuniary interests and material resources was the tuition. The tuition was charged before the class occurred and was chargeable in full regardless of whether the victim did or did not participate in and derive benefit from the class he missed. The loss of enjoyment complained of here is independent of the sole economic aspect[8] of the class established in the record.[9]

¶ 37 The distinction between an economic loss and loss of enjoyment is illustrated in cases involving damaged vehicles. In *William L.*, for example, after the defendant "totaled" the victim's vehicle, the juvenile court entered an award of restitution for the victim's insurance deductible in purchasing a replacement vehicle and for the amount she paid in an accelerated payoff on the lien on the vehicle. 211 Ariz. at 239, ¶ 9, 119 P.3d at 1042. In affirming the award, including the amount exceeding the fair market value of the vehicle, this Court emphasized the "financial burdens" the victim suffered as a result of the destruction of her vehicle. *Id.* at 240, ¶ 14, 119 P.3d at 1043. At no point, however, did this Court mention any enjoyment of the use or appearance of the vehicle the victim may have lost or missed out on,

despite that the vehicle had been totally destroyed as a result of the delinquent act.

¶ 38 In *Barrett,* the defendant pled guilty to fraudulent schemes and artifices after he purchased a vehicle with a bad check. 177 Ariz. at 46–47, 864 P.2d at 1078–79. The trial court entered a restitution award based upon the dealership manager's testimony that, because the vehicle was returned to the dealership after the release of a new edition of the Kelly Blue Book, the dealership had lost an amount of profit it would have realized had the vehicle legitimately sold prior to that release. *Id.* at 47, 864 P.2d at 1079. After holding that this purported lost profit margin was consequential damages, this Court went on to point out that there was no evidence to support the amount of the award. *Id.* at 48, 864 P.2d at 1080. This was because there was no evidence of the amount the victim had paid for the vehicle, the time and amount for which the vehicle sold, or the actual Blue Book value of the vehicle. *Id.* at 48–49, 864 P.2d at 1080–81. The absent evidence indicates the pecuniary and material aspect of economic losses: this Court insisted upon evidence of monetary values for the alleged lost profit. If such non-pecuniary losses were compensable in criminal restitution, the dealership's loss of enjoyment of the vehicle during the period it was in the defendant's possession would have been compensable, and certainly provable by means other than showing actual monetary values.

¶ 39 In *Morris,* this Court affirmed an award of restitution for the cost of taxi fares and car rental fees after the victim's vehicle was damaged by the defendant. 173 Ariz. at 18–19, 839 P.2d at 438–39. The court stated that "basic necessities of everyday life" should be recoverable in criminal restitution. *Id.* at 19, 839 P.2d at 439. Although this Court declined to adopt an unduly narrow

---

7. The majority makes a point that there are other means of valuation besides fair market value for criminal restitution purposes. I agree there are different means by which a court in its discretion may value compensable economic loss. *See Ellis,* 172 Ariz. at 551, 838 P.2d at 1312. Valuation, however, is an inquiry separate from compensability.

8. The result would be different if there was some evidence in the record indicating the missed

class had some impact upon the victim's material resources or pecuniary interests. There is none.

9. My analysis remains the same in other like scenarios. Thus, in the hypothetical situations described by the majority, assuming no additional facts, I would conclude that the losses described were non-economic losses of enjoyment not compensable in criminal restitution proceedings. Instead, they would be more appropriately compensated in civil proceedings.

approach to compensable criminal restitution awards, the approach is nonetheless pragmatic. Significantly, the court's illustrations of awards for the "necessities of life" involved *subsequent expenditures* for medical treatment, mental health counseling, and moving to a safer location. *Id.* In addition, the restitution awarded for the victim's deprivation of the vehicle did not relate to his inability to use the vehicle or gaze upon its visage, but to the *costs* associated with replacing how he used the vehicle. *Id.* No such costs have been demonstrated here.

¶ 40 Absent such actual costs, in a strict economic sense the award here places the victim in a better pecuniary and material position than he was prior to the delinquent act, for he would not have had the benefit of the money awarded regardless of whether he attended the class. This is not an appropriate result in criminal restitution awards. *Ryan A.*, 202 Ariz. at 25, ¶ 27, 39 P.3d at 549 (restitution should not result in a windfall to the victim). As mentioned above, I do not deny the victim experienced a non-economic loss. Surely the loss of enjoyment of his class is a compensable loss. This loss, however, must be compensated after a civil trial.

¶ 41 Andrew's liability for the victim's loss must be litigated in a civil trial for constitutional reasons. A civil trial would afford Andrew due process rights not available in criminal restitution proceedings. As this Court has stated:

> Disposing of civil liability cannot be a function of restitution in a criminal case. To begin with, the criminal justice system is essentially incapable of determining that a defendant is in fact civilly liable, and if so, to what extent. A judge may infer from a jury verdict of guilt in a theft case that a defendant is liable to the crime victim. But a trial court cannot properly conclude that the defendant owes money to a third party for other unproved or disproved crimes or conduct. A party sued civilly has important due process rights, including appropriate pleadings, discovery, and a

right to a trial by jury on the specific issues of liability and damages. The judge in the criminal trial should not be permitted to emasculate those rights by simply declaring his belief that the defendant owes a sum of money.

*State v. Reese,* 124 Ariz. 212, 215, 603 P.2d 104, 107 (App.1979) (citation omitted). *See also Wilkinson,* 202 Ariz. at 29–30, ¶¶ 11–12, 39 P.3d at 1133–34 (limiting restitution to damages directly caused by crime prevents restitution statutes from conflicting with right to civil jury trial).[10] If courts permit victims to be made whole by allowing all damages—economic and non-economic—from the crime to be subject to restitution, those rights will be violated.

¶ 42 Clearly, a victim who suffers non-economic harm from a crime can sue the perpetrator civilly to be made whole. Those losses, however, cannot be made part of a criminal restitution award. Consequently, I would hold that the juvenile court erred when it ordered Andrew to reimburse a portion of the pre-paid tuition to the victim and would vacate that portion of the restitution award.

---

10. The majority cites *Wilkinson* to state that its analysis passes constitutional muster. As the majority acknowledges, though, the analysis in *Wilkinson* had little bearing on the issue presented in this case. Majority at ¶ 16. Thus, the statement in *Wilkinson* declaring its own analysis satisfied constitutional protections does not lend support to the contention that the majority's analysis, which consciously does not rely upon *Wilkinson,* also satisfies those protections.