207 P.3d 683

**STATE of Arizona, Appellee,**

v.

**Robert Eugene ALLEN, Jr., Appellant.**

**No. 1 CA–CR 07–0803.**

Court of Appeals of Arizona, Division 1, Department C.

Nov. 18, 2008.

As Corrected Jan. 13, 2009.

Review Granted June 1, 2009.

---

Terry Goddard, Attorney General By Kent Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section, and Sarah E. Heckathorne, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Christopher V. Johns, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

HALL, Judge.

¶ 1 Robert Eugene Allen, defendant, appeals his convictions for aggravated assault, misconduct involving weapons, and possession of marijuana, and the sentences imposed. For the reasons that follow, we affirm defendant's convictions and sentences for aggravated assault and misconduct involving weapons. As to defendant's conviction and sentence for possession of marijuana, we remand for further proceedings consistent with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 "We construe the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." State v. Greene, 192 Ariz. 431, 436, ¶ 12, 967 P.2d 106, 111 (1998). In our review of the record, we resolve any conflict in the evidence in favor of sustaining the verdict. State v. Guerra, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

¶ 3 At approximately 7:00 p.m. the evening of December 8, 2006, Phoenix Police Officers Brian B. and Travis J. were conducting an undercover narcotics operation. The officers were wearing plain clothes and sitting in an unmarked vehicle when they heard a commotion at a nearby home. The officers drove to the front of the house and saw several silhouettes moving about in the front yard. Moments later, the victim ran toward the officers' vehicle screaming "help, help me." The victim ran past the officers' car and then

defendant appeared, chasing after her. Officer Brian B. noticed defendant was holding a black gun in his right hand.

¶ 4 The officers followed the victim and observed as she ran into a dead end and found herself trapped. The victim fell to her knees and the officers saw defendant hold a gun to her head. Immediately, the officers exited their vehicle and began yelling "Police, drop the gun. Police." Defendant responded to the officers by running away and jumping over a nearby fence. The officers approached the crying victim and noticed she had urinated on herself. Although initially incoherent, the victim eventually told the officers that she believed defendant was going to kill her. The victim also informed the officers that defendant is her son.

¶ 5 Officer Brian B. notified other undercover officers in the area of defendant's description and approximate location. Almost immediately following Officer Brian B.'s broadcast, Phoenix Police Officer Paul P. observed defendant running down the street. Officer Paul P. opened his vehicle's door to exit when he saw defendant approach a dumpster, "make a motion like he was throwing something," and then heard a sound "like a metal on metal."

¶ 6 Officer Paul P. apprehended defendant. When he conducted a search of defendant's person incident to the arrest, he found thirteen rounds of ammunition in defendant's jacket pocket and a small amount of marijuana in defendant's pant pocket. The officer then looked into the dumpster, saw a small revolver, and observed that no other metal objects were visible.

¶ 7 After placing defendant into custody, Officer Paul P. advised defendant of the *Miranda*[1] warnings and then spoke with him about the events of the evening. Defendant admitted possessing a gun, being a prohibited possessor, and chasing the victim while carrying the gun, but he denied pointing the gun at the victim. Defendant also admitted that he knowingly possessed marijuana, but stated that it was for personal use, not for sale.

¶ 8 After defendant's arrest, Officer Brian B. identified him as the man he saw holding a gun to the victim. The officer also identified the recovered gun, a .38 Special, as the weapon he saw defendant holding. The gun contained five bullets, the maximum number of bullets that model of gun can hold.

¶ 9 Defendant was charged by indictment with three counts of aggravated assault, class three dangerous felonies and domestic violence offenses, one count of disorderly conduct, a class six dangerous felony and domestic violence offense, one count of misconduct involving weapons, a class four felony, and one count of possession of marijuana, a class six felony. The State also alleged that defendant had two historical prior felony convictions. Before trial commenced, the court granted the State's motion to dismiss two of the counts of aggravated assault.

¶ 10 On the second day of trial, the State and defendant agreed to have the trial court read the jury the following stipulations:

> The defendant and the State stipulate that the defendant is a prohibited possessor. The defendant and the State stipulate that the defendant was in possession of a usable amount of marijuana on December 8th, 2006.

¶ 11 After a two-day trial, the jury found defendant guilty of one count of aggravated assault, one count of disorderly conduct, one count of misconduct involving weapons, and one count of possession of marijuana. Finding insufficient evidence to separately support both the guilty verdict for aggravated assault and the guilty verdict for disorderly conduct, the trial court dismissed the disorderly conduct count. At the sentencing hearing, defendant admitted two prior felony convictions. The trial court then sentenced defendant to a mitigated term of 10 years in prison on the aggravated assault count, a concurrent, presumptive prison term of 10 years for the misconduct involving weapons count, and a concurrent, presumptive term of 3.75 years in prison for the possession of marijuana count.

¶ 12 Defendant timely appealed. This court has jurisdiction pursuant to the Ari-

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

zona Constitution, Article 6, Section 9, and Arizona Revised Statutes (A.R.S.) sections 12–120.21(A)(1) (2003), 13–4031, and –4033 (2001).

## DISCUSSION

¶ 13 As his sole issue on appeal, defendant asserts that the trial court erred by reading the parties' stipulations to the jury. Specifically, defendant contends that the "stipulations were the functional equivalents of guilty pleas," and the trial court was therefore required to advise defendant, pursuant to *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and Arizona Rule of Criminal Procedure 17, of the consequences of the stipulations and obtain his waiver before proceeding. Defendant claims that he did not "receive a fair trial" and that all of his convictions must be reversed.

¶ 14 Defendant's counsel agreed to have the stipulations presented to the jury and did not object when the trial court read them. Defendant has therefore forfeited his right to relief on appeal on this basis unless he can establish that fundamental error occurred. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005).

¶ 15 Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *Id.* (quotation omitted). We place the burden of persuasion on the defendant in a fundamental error review to discourage a defendant from taking his chances on a favorable verdict, "reserving the 'hole card' of a later appeal" on a matter that was wholly curable at trial, and then seeking reversal on appeal. *Id.* (quotation omitted). Therefore, to prevail under this standard of review, a defendant must establish that error occurred, that the error was fundamental, and that the error resulted in prejudice. *Id.* at ¶ 20, 115 P.3d at 607.

¶ 16 A stipulation is binding on the parties, but it is not binding on the jury. *State v. Virgo*, 190 Ariz. 349, 353, 947 P.2d 923, 927 (App.1997), *distinguished on other grounds by State v. Cabanas–Salgado*, 208

Ariz. 195, 198, ¶ 21, 92 P.3d 421, 424 (App. 2003). Indeed, a jury may accept or reject any aspect of a stipulation and the jury must always find that the State proved the elements of the offense beyond a reasonable doubt. *Id.* at 353–54, 947 P.2d at 927–28; *see also State v. Carreon*, 210 Ariz. 54, 64, ¶ 47, 107 P.3d 900, 910 (2005).

¶ 17 The first stipulation read: "The defendant and the State stipulate that the defendant is a prohibited possessor." In the final jury instructions, the trial court informed the jurors that the crime of misconduct involving weapons requires proof that defendant: (1) knowingly possessed a deadly weapon, and (2) was a prohibited possessor at the time of possession of the weapon. By stipulating to the second element, his status as a prohibited possessor, defendant prevented the jury from hearing prejudicial evidence regarding the reason he was a prohibited possessor, namely, his two previous felony convictions. *See* A.R.S. § 13–3101(A)(6)(b) (Supp.2007) (defining a prohibited possessor as any person "[w]ho has been convicted ... of a felony ... and whose civil right to possess or carry a gun or firearm has not been restored"). By entering the stipulation, defendant did not, however, admit that he knowingly possessed a deadly weapon. Indeed, a substantial part of defendant's trial strategy consisted of challenging the State's claim that he ever possessed the gun recovered from the dumpster.

¶ 18 Absent exceptional circumstances, trial counsel may enter stipulations for strategic reasons without first obtaining the defendant's consent. *State v. West*, 176 Ariz. 432, 447, 862 P.2d 192, 207 (1993) (upholding stipulation in death penalty case that defendant committed a crime of violence that constituted an aggravating circumstance), *overruled on other grounds by State v. Rodriguez*, 192 Ariz. 58, 64 n. 7, ¶ 30, 961 P.2d 1006, 1012 n. 7 (1998); *see Henry v. Mississippi*, 379 U.S. 443, 451–52, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965) (stating that "deliberate bypassing by counsel of the contemporaneous-objection rule [to illegally seized evidence] as a part of trial strategy" was not an exceptional circumstance requiring prior con-

sultation with the defendant). A stipulation to facts that the State could easily prove does not typically amount to an exceptional circumstance requiring a defendant's consent. *West,* 176 Ariz. at 447, 862 P.2d at 207. This is particularly true when, as here, admission of the underlying facts might also prejudice defendant. Given these circumstances, we conclude that the stipulation was not the functional equivalent of a guilty plea requiring a personal waiver by defendant. Therefore, the trial court did not err, let alone commit fundamental error, when it accepted the parties' stipulation and read it to the jury without first conducting a *Boykin* colloquy with defendant.

¶ 19 We reach a different conclusion, however, regarding the second stipulation, which read: "The defendant and the State stipulate that the defendant was in possession of a usable amount of marijuana on December 8th, 2006." In the final jury instructions, the trial court informed the jury that the crime of possession of marijuana requires proof that: (1) defendant knowingly possessed marijuana, (2) the substance was in fact marijuana, and (3) the substance was a usable amount of marijuana, according to the practices of marijuana users. The final jury instructions also provided the statutory definition of "possess" as "knowingly [ ] hav[ing] physical possession . . . over property." *See* A.R.S. § 13–105(30) (Supp.2007). Thus, defendant clearly stipulated to the second and third elements of the crime. The State claims that the stipulation did not encompass the element that defendant *knowingly* possessed marijuana, but as reflected in the jury instruction, his knowledge is implicit in the stipulation of possession. Moreover, defendant did not testify at trial and did not attempt through cross-examination or argument to contest that he knowingly possessed the marijuana found in his pant pocket. Although the jury was not required to accept the parties' stipulation that defendant was in possession of marijuana or that the confiscated substance was indeed marijuana of a useable amount, the stipulation combined with the State's uncontested evidence of defendant's guilt was tantamount to a plea of guilty.

¶ 20 The parties have not cited, and our research has not revealed, any Arizona case squarely addressing the issue here: whether a trial court, before accepting a stipulation entered during trial that is the functional equivalent of a guilty plea, must advise a defendant of the consequences of the stipulation and obtain a waiver. However, in *State v. Avila,* 127 Ariz. 21, 22, 24–25, 617 P.2d 1137, 1138, 1140–41 (1980), in which the defendant agreed to submit the determination of his guilt to the court based solely upon the transcripts of the preliminary hearing and the departmental report, the Arizona Supreme Court held that a trial court must inform a defendant of certain constitutional rights that a defendant surrenders when proceeding with a bench trial on a stipulated record. *Id.* at 25, 617 P.2d at 1141. As relevant here, those rights include the right against self-incrimination and the right to confront adverse witnesses. The supreme court also held that, "as in any proceeding involving the surrender of Constitutional rights, it must appear from the record that the waiver was knowingly, intelligently and voluntarily made. Such condition of mind [ ] will not be presumed from a silent record." *Id.; see State v. Conroy,* 168 Ariz. 373, 375, 814 P.2d 330, 332 (1991) (characterizing *Avila* as establishing that the "entire litany of *Boykin* rights" must be provided in all cases submitted to the bench on a stipulated record). The circumstance that this case was tried to a jury rather than the court and that defendant did not therefore surrender his jury trial right, is, we believe, a distinction without a significant difference. Here, as did the defendant in *Avila,* defendant surrendered his right to confront witnesses against him as to the marijuana offense. Moreover, unlike the defendant in *Avila,* defendant stipulated that he actually committed the crime of marijuana possession, thereby surrendering his right not to incriminate himself.

¶ 21 In this case, the trial court neither advised defendant of the constitutional rights being waived nor ascertained that the waiver was voluntary and intelligent. Instead, the trial court accepted the stipulation presented by the parties and read it to the jury without ever addressing defendant. As seemingly required by the stipulation, defense counsel

**435**

neither cross-examined the State's witnesses on the marijuana offense nor made any argument for a not guilty verdict. Neither did defense counsel use the stipulation to argue to the jury that defendant accepted responsibility for the one offense that he committed but not for the other more serious crimes with which he was charged. Thus, unlike the first stipulation, we perceive no strategic reason underlying this particular stipulation. Under these circumstances and based on *Avila,* we conclude that the stipulation pertaining to the possession of marijuana charge was the functional equivalent of a guilty plea, and was therefore an exceptional circumstance that required the trial court to inform defendant of his attendant constitutional rights and obtain a waiver.

¶ 22 Because the trial court fundamentally erred when it read the stipulation to the jury without first engaging defendant in a Rule 17–type colloquy and ascertaining that he voluntarily and intelligently entered the stipulation regarding the marijuana charge, defendant is entitled to an evidentiary hearing to show that he was prejudiced by the lack of compliance with Rule 17. *See State v. Darling,* 109 Ariz. 148, 153, 506 P.2d 1042, 1047 (1973) (remanding to determine if the defendant knew he was waiving his right to confront his accusers and his privilege against self-incrimination by pleading guilty); *see also State v. Carter,* 216 Ariz. 286, 292, ¶ 27, 165 P.3d 687, 693 (App.2007) (holding that defendant was entitled to an evidentiary hearing to prove he was prejudiced by the trial court's failure to conduct a Rule 17 colloquy in connection with a stipulated prior conviction). If defendant can show that he was unaware of the rights he waived and that he would not have agreed to the stipulation had he been aware, then the trial court is instructed to vacate his conviction and sentence on the marijuana offense and grant a new trial on that charge. Because we do not perceive that defendant was in any way denied a fair trial as to the remaining counts by virtue of the second stipulation being read to the jury, we decline to vacate his convictions and sentences for aggravated assault and misconduct involving weapons.

## CONCLUSION

¶ 23 For the reasons set forth above, we remand for further proceedings regarding defendant's conviction for possession of marijuana. Defendant's convictions and sentences for aggravated assault and misconduct involving weapons are affirmed.

CONCURRING: LAWRENCE F. WINTHROP, Presiding Judge, and PATRICK IRVINE, Judge.