119 P.3d 1039

### In re WILLIAM L., III.

### No. 1 CA–JV 04–0206.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 15, 2005.

Andrew P. Thomas, Maricopa County Attorney by Linda Van Brakel, Deputy County Attorney, Phoenix, Attorneys for Appellees.

James J. Haas, Maricopa County Public Defender, by Suzanne Sanchez, Deputy County Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

HALL, Judge.

¶ 1 William L. (juvenile) appeals from the juvenile court's restitution order entered after he was adjudicated delinquent for the offense of unlawful use of a means of transportation. He contends that the juvenile court abused its discretion by including with-

in its restitution order the amount by which the outstanding encumbrance on the victim's totaled vehicle exceeded its fair market value. Under the circumstances of this case, we conclude the juvenile court did not abuse its discretion. We therefore affirm the restitution order but modify it to correct an arithmetical error in its calculation.

## FACTS AND PROCEDURAL HISTORY

¶2 On April 19, 2004, the State filed a delinquency petition charging juvenile with unlawful use of a means of transportation, a class five felony in violation of Arizona Revised Statutes (A.R.S.) section 13–1803(A)(1) (2001). At the adjudication hearing, the juvenile court adjudicated juvenile delinquent, placed him on standard probation, and scheduled a restitution hearing.

¶3 At the restitution hearing, the victim testified that juvenile stole and "totaled" her 1996 Acura, rendering it completely inoperable. When questioned about her out-of-pocket expenses, the victim explained that, in addition to incurring the expense of a replacement vehicle, she had paid $2,260.73 to the acceptance corporation that financed her purchase of the Acura, which was the amount by which the "payoff" balance owed on the car exceeded the value of her vehicle as determined by her insurance company (minus a $500.00 deductible).[1] At the conclusion of the evidence, the juvenile court found that the victim "sustained a monetary loss as a direct result of the actions for which the juvenile was adjudicated, in the amount of $2,296.10."[2] Accordingly, the juvenile court ordered juvenile to pay restitution in that amount, at a rate of $100.00 per month.

¶4 Juvenile timely appealed the order. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S § 8–235(A) (Supp.2004).

## DISCUSSION

### I.

¶5 Juvenile first claims that the juvenile court failed to apply the proper standard of proof, by a preponderance of the evidence, when it "f[ound] that the victim ha[d] sustained a monetary loss as a direct result of the actions for which the juvenile was adjudicated...." As support for his argument, juvenile cites *In re Maricopa County Juv. Action No. J–66470,* 19 Ariz.App. 577, 578, 509 P.2d 649, 650 (1973), in which the court determined that a juvenile court's "reasonable satisf[action]" with the evidence fell short of the minimum standard for the burden of proof.

¶6 The burden of proof applicable to restitution is proof by a preponderance of the evidence. *In re Stephanie B.,* 204 Ariz. 466, 470, ¶15, 65 P.3d 114, 118 (App.2003). Proof by a preponderance of the evidence means "proof which leads the [trier of fact] to find that the existence of the contested fact is more probable than its nonexistence." *Matter of Appeal in Maricopa County Juv. Action No. J–84984,* 138 Ariz. 282, 283, 674 P.2d 836, 837 (1983) (citation omitted).

¶7 Trial judges are presumed to know the law and apply it correctly in making their decisions. *See State v. Trostle,* 191 Ariz. 4, 22, 951 P.2d 869, 887 (1997) (citing *Walton v. Arizona,* 497 U.S. 639, 653, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990)). A trial judge is not required to expressly state the burden of proof applied; we assume the judge applied the proper burden of proof. *State v. Beaty,* 158 Ariz. 232, 246, 762 P.2d 519, 533 (1988). Thus, although the juvenile court did not specifically state that it was applying the preponderance of the evidence standard, we assume that it found that the evidence before it, more probably than not, supported the victim's restitution claim.

¶8 Juvenile's reliance on *In re Maricopa County Juv. Action No. J–66470* is misplaced. In that case, the juvenile court stated that it was "reasonably satisfi[ed]" that the juvenile violated probation. *See In the Matter of Anonymous,* 16 Ariz.App. 597, 598, 494 P.2d 1342, 1343 (1972) ("All that is necessary is that the evidence and facts be such as to reasonably satisfy the court that the probationer is violating the terms of his proba-

---

1. The payoff balance was $11,511.83. The victim's insurance company paid the remaining $9,251.10 directly to the acceptance corporation.

2. The additional amount of $35.37 in the juvenile court's order is attributable to an arithmetical error.

tion....""). On appeal, we held that the proper standard of proof for juvenile revocation proceedings was by a preponderance of the evidence, and not the lesser "reasonably satisfied" standard. *In re Maricopa County Juv. Action No. J–66470*, 19 Ariz.App. at 578, 509 P.2d at 650. Thus, *In re Maricopa County Juv. Action No. J–66470* represents an anomalous situation, not present here, in which the juvenile court expressly articulated and applied an incorrect standard of proof.

## II.

■ ¶ 9 The restitution ordered by the trial court was the sum of the $500.00 insurance deductible and the remaining $1,760.73 that the victim still owed on the car after application of the insurance proceeds. Juvenile concedes that restitution in the amount of $500.00 was proper but contends that the balance of the restitution order was inappropriate because it exceeded the car's fair market value. We disagree.

■ ¶ 10 A juvenile offender is required to make "full or partial restitution to the victim of the offense for which the juvenile was adjudicated delinquent." A.R.S. § 8–344(A) (Supp.2004). To determine the need for and amount of restitution, the "court may consider a verified statement from the victim concerning ... *reasonable damages for injury to or loss of property* ...." § 8–344(B) (emphasis added). We review a juvenile court's restitution determination for an abuse of discretion. *In re Erika V.*, 194 Ariz. 399, 400, ¶ 2, 983 P.2d 768, 769 (App.1999). On appeal, we will uphold the amount of restitution if it bears a reasonable relationship to the victim's loss. *In re Ryan A.*, 202 Ariz. 19, 24, ¶ 20, 39 P.3d 543, 548 (App.2002).

■ ¶ 11 Arizona's statutory scheme requiring restitution in criminal cases is based on the principle that the offender should make reparations to the victim by restoring the victim to his economic status quo that existed before the crime occurred. An adult convicted of a criminal offense is required to pay restitution to the victim "in the full amount of the economic loss as determined by the court." A.R.S. § 13–603(C) (Supp. 2004).[3] "Economic loss" means:

> [A]ny loss incurred by a person as a result of the commission of an offense. Economic loss includes lost interest, lost earnings and other losses which would not have been incurred but for the offense. Economic loss does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages.

A.R.S. § 13–105(14) (2001); *see also* A.R.S. § 13–804 (2001) ("In ordering restitution for economic loss ..., the court shall consider all losses caused by the criminal offense....").

■ ¶ 12 This concept is commonly referred to as making the victim "whole." *See, e.g., In re Ryan A.*, 202 Ariz. at 24, ¶ 20, 39 P.3d at 548; *State v. Reynolds*, 171 Ariz. 678, 681, 832 P.2d 695, 698 (App.1992) ("[A] trial court is required to determine the full amount of the victim's loss to make the victim whole."). Accordingly, the court "must consider the victim's loss in fashioning an order appropriate to a particular case." *Matter of Appeal in Pima County Juv. Action No. 45363–3*, 151 Ariz. 541, 541, 729 P.2d 345, 345 (App.1986). To ensure that the victim is made whole, the court has broad discretion in setting the restitution amount based on the facts of the case. *Id.* However, the court may not order restitution that would make the victim more than whole. *See In re Ryan*, 202 Ariz. at 25, ¶ 27, 39 P.3d at 549 (noting a victim is not entitled to a windfall).

■ ¶ 13 In *State v. Wilkinson*, 202 Ariz. 27, 29, ¶ 7, 39 P.3d 1131, 1133 (2002), our supreme court interpreted these statutes as imposing three requirements for a recoverable loss: (1) the loss must be economic, (2) the loss must be one that the victim would not have incurred but for the juvenile's criminal offense, and (3) the criminal conduct must directly cause the economic loss, that is, the damage must not be consequential. Accordingly, if the loss does not flow directly from the defendant's criminal activity, it is considered a non-recoverable, consequential dam-

---

3. In reviewing the propriety of a restitution order by a juvenile court, we also consider the restitution statutes and case law applicable in adult criminal prosecutions. *In re Erika V.*, 194 Ariz. at 400, ¶ 4, 983 P.2d at 769.

age. *See In re Stephanie B.*, 204 Ariz. at 469, ¶ 10, 65 P.3d at 117 (applying the *Wilkinson* test in the juvenile setting).

¶ 14 Juvenile's claim that the restitution order was "excessive" is another way of saying that the $1,760.73 payoff differential is not the type of loss for which restitution is recoverable. To test this claim, we use the three-part test for economic loss set forth in *Wilkinson*. First, did the victim suffer an economic loss beyond the $500.00 insurance deductible? We perceive that she did. As a result of juvenile's theft and destruction of her car, the victim suffered the double financial burden of having to make an accelerated payoff of the remaining encumbrance on a car that had no value while also having to undergo the expense of purchasing a replacement vehicle. Second, the cause-in-fact requirement is readily satisfied because the victim would not have incurred any loss but for juvenile's commission of the offense. Third, because juvenile's criminal conduct directly caused the economic loss "without the intervention of additional causative factors[,]" *Wilkinson*, 202 Ariz. at 29, ¶ 7, 39 P.3d at 1133, the loss was not a non-recoverable consequential damage.[4] Accordingly, the loss in this case was one for which restitution could be ordered.

¶ 15 Juvenile nonetheless relies on *State v. Ellis*, 172 Ariz. 549, 838 P.2d 1310 (App.1992), for the proposition that the measure of the victim's economic loss cannot exceed the car's fair market value, which in this case was fixed at $9,751.10 by the victim's insurance company. *Ellis* holds that "in assessing restitution for a loss of personal property, the measure of the victim's full economic loss is the fair market value of the property at the time of the loss." *Id.* at 550,

838 P.2d at 1311.[5] In the next sentence, however, the court qualified this holding by stating: "The judge has discretion to use other measures of economic loss when fair market value will not make the victim whole." *Id.* Thus, the majority in *Ellis* recognized that fair market value should not be used as the measure for the "full amount of the economic loss" suffered by a crime victim if the result is that the victim is made less than whole. Indeed, the court, acknowledging the existence of "exceptions" to its fair market value rule, cited several examples when purchase price or replacement cost might be a more appropriate standard than fair market value, including the situation of a new car that is stolen shortly after being purchased. *Id.* at 551, 838 P.2d at 1312.

¶ 16 In our view, the purchase-money encumbrance in this case is analogous to the new-car exception articulated in *Ellis*. As we previously remarked, ¶ 13 *supra*, the victim suffered an economic loss beyond her $500.00 insurance deductible. In such a circumstance, as the court in *Ellis* recognized, a victim's recovery should not be limited to fair market value when that measure is less than the actual economic loss.

¶ 17 The juvenile court correctly perceived that the primary purpose of restitution—to make the victim whole—would have been frustrated if the measure of recovery was limited to fair market value. Based on the facts of this case, the court did not abuse its discretion by ordering juvenile to pay as restitution the entire amount by which the encumbrance on the car exceeded the insurance payout. *See State v. Madrid*, 207 Ariz. 296, 298, ¶ 5, 85 P.3d 1054, 1056 (App.2004) (trial court has "substantial discretion" in

---

4. Consequential damages are those that "are not produced without the concurrence of some other event attributable to the same origin or cause; such damage, loss, or injury as does not flow directly and immediately from the act of the party, but only from the consequences or results of such act." 25 C.J.S. *Damages*, § 2 at 617 (2002). *See State v. Lindsley*, 191 Ariz. 195, 198, 953 P.2d 1248, 1251 (App.1997) (adopting C.J.S. definition); *see also State v. Guilliams*, 208 Ariz. 48, 53, ¶ 18, 90 P.3d 785, 790 (App.2004) (applying "reasonableness" standard in determining whether "causal nexus between the conduct and the loss" is "too attenuated (either factually or temporally)" to qualify as a direct economic loss)

(quoting *United States v. Vaknin*, 112 F.3d 579, 589–90 (1st Cir.1997)). For example, in *State v. Pearce*, 156 Ariz. 287, 289–90, 751 P.2d 603, 605–06 (App.1988), we held that a company's loss of lease profits from the conversion of its property were non-recoverable consequential damages.

5. The dissenting judge disagreed with the majority's limitation of a victim's restitution to fair market value because he believed that "economic loss" was intended by the legislature "to cover losses well beyond that concept of value." *Id.* at 553, 838 P.2d at 1314 (Eubank, J., dissenting).

determining amount of victim's economic loss).[6]

¶ 18 However, the amount of restitution was incorrectly calculated to be $2,296.10, an excess of $35.37. Therefore, we modify the court's order to reflect that the proper amount of restitution is $2,260.73.

## CONCLUSION

¶ 19 The restitution order is affirmed as modified.

CONCURRING: PATRICK IRVINE, Presiding Judge and JAMES B. SULT, Judge.

---

6. Juvenile also relies on *State v. Reynolds* as support for his assertion that the proper amount of restitution for a destroyed vehicle is the vehicle's fair market value at the time of the theft. This reliance is misplaced. In *Reynolds,* the issue was not whether fair market value was the correct restitution measure. Rather, the issue presented was whether the defendant should be required to pay to the victim's insurance company the difference between the car's fair market value and the amount received by the the salvage company when it disposed of the vehicle for less than fair market value at a closed auction. 171 Ariz. at 680–83, 832 P.2d at 697–700.