NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE BRADEN C.


No. 1 CA-JV 20-0059
FILED 07-21-2020

---

Appeal from the Superior Court in Yavapai County
No. P1300JV201900103
The Honorable Anna C. Young, Judge

**AFFIRMED**

---

COUNSEL

The Law Offices of Michael and Casey, Phoenix
By Robert Ian Casey
*Counsel for Appellant*

Yavapai County Attorney's Office, Prescott
By Danalyn E. Savage
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Michael J. Brown joined.

---

**G A S S,** Judge:

¶1            B.C. challenges the superior court's $182,813.00 restitution award to the Chino Valley Unified School District and the Arizona School Risk Retention Trust. Of that amount, B.C. was ordered to pay one fourth, or $45,703.25. For the following reasons, this court affirms the award.

## FACTUAL AND PROCEDURAL HISTORY

¶2            This court views the facts and all reasonable inferences in the light most favorable to sustaining the superior court's restitution order. *See State v. Lewis*, 222 Ariz. 321, 323, ¶ 2 (App. 2009). The superior court properly determines the credibility of the witnesses and the authenticity of the victim's documented damages. *See Maricopa Cty. Juv. Action No. JV-132905*, 186 Ariz. 607, 609 (App. 1996). This court will not "reweigh evidence, but only look to determine if there is evidence to sustain the [superior] court's ruling." *Id.*

¶3            B.C. and three others broke into the School and covered its basketball court with oil. The oil was "all over the gym floor" from "basket to basket covering the entire court area." The School's maintenance team tried to remove the oil but realized the job was beyond its ability. B.C. was charged with third-degree burglary and aggravated criminal damage, both class 4 felonies. B.C. admitted to solicitation to commit burglary in the third degree, non-residential structure, a class 6 undesignated felony. The superior court placed B.C. on supervised probation. The superior court then set and held a contested restitution hearing.

¶4            The evidence at the restitution hearing showed the District filed a claim with the Trust once the School realized its maintenance team could not remove the oil. The Trust then hired Sun Country Flooring. The Trust previously vetted Sun Country, identifying it as a preferred vendor because of its pricing, service, professionalism, and quality of its work.

¶5            A Sun Country representative testified in detail about the efforts to repair the gym floor to avoid having to replace it entirely. Reluctantly, Sun Country concluded the oil damage was too widespread, leaving replacement as the only option. The cost to have Sun Country replace the floor, taking into account discounts, moving the gym bleachers, and necessary asbestos testing, was $182,813.00.

¶6            B.C.'s expert, who had not inspected the damaged floor, testified it did not need to be replaced and instead could have been repaired for about $6,000.00. B.C.'s expert also testified Sun Country's bid was too high. For example, Sun Country charged $3.90 per square foot for

the maple wood, but he said he could have secured the same wood from the same provider for $3.45 per square foot. He said Sun Country upgraded the padding, increasing the cost by $0.37 per upgraded pad. He also said he would not have included the $10,300.00 cost of moving the bleachers, saying it was a separate issue. B.C.'s expert ultimately testified he would have bid about $150,000.00 for the same job.

**¶7**         After hearing the conflicting testimony, reviewing the evidence, and hearing closing arguments, the superior court awarded $182,813.00 in restitution. Because B.C. was a juvenile, the superior court allocated one fourth of that amount, or $45,703.25, to B.C.

**¶8**         B.C. timely appealed the restitution order. This court has jurisdiction under Article 6, Section 9 of the Arizona Constitution, A.R.S. §§ 8-235.A, 12-120.21.A.1, and Ariz. R. Juv. P. 103(A).

## ANALYSIS

**¶9**         On appeal, B.C. argues the award gives the School a windfall. Specifically, B.C. argues the Trust did not exercise due diligence when it relied exclusively on its "preferred vendor," Sun Country, and decided to replace the floor rather than repair it. B.C. misstates the issue. Because the superior court resolved conflicting testimony, this court will uphold the restitution award if the evidence establishes it bears "a reasonable relationship to the victim's loss." *See In re William L.*, 211 Ariz. 236, 239, ¶ 10 (App. 2005).

**¶10**         When a juvenile is adjudicated delinquent, the superior court shall order the juvenile to make full or partial restitution to the victim of the offense. A.R.S. § 8-344.A. The superior court may consider "a verified statement from the victim . . . concerning damages for . . . loss of property. . . ." A.R.S. § 8-344.B. Restitution is appropriate for economic losses occurring because of the juvenile's delinquent conduct if they are a direct, not consequential, result of that delinquent conduct. *See In re Andrew C.*, 215 Ariz. 366, 368, ¶ 9 (App. 2007). "The guiding principle is to make the victim whole, to the extent permitted by the statutory and constitutional scheme." *Id.* at 369, ¶ 11 (internal quotation omitted).

**¶11**         This court reviews restitution orders for an abuse of discretion. *See Lewis*, 222 Ariz. at 323, ¶ 5. An abuse of discretion occurs when "the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice." *State v. Riley*, 248 Ariz. 154, 167, ¶ 7 (2020). The superior court has "substantial discretion" in determining the amount of restitution owed to a victim. *See State v.*

*Madrid*, 207 Ariz. 296, 298, ¶ 5 (App. 2004); *William L.*, 211 Ariz. at 241, ¶ 17 (restitution based on amount remaining on car loan appropriate even if it exceeds car's market value if market value would not make victim whole).

¶12        Here, the superior court heard detailed testimony from Sun Country outlining its efforts to mitigate the cost to repair the damage to the gym floor. Sun Country described how it ultimately, and reluctantly, concluded it had to replace the floor. The superior court also heard from B.C.'s expert, who said he would have repaired the gym floor for $6,000.00 and replaced it for $150,000.00.

¶13        In its ruling, the superior court discussed the conflicting testimony and ultimately found the $182,813.00 cost of replacing the gym floor reasonable and the District and the Trust were entitled to restitution in that amount. *See Madrid*, 207 Ariz. at 298, ¶ 5. The superior court's order considered the damage B.C.'s conduct caused, calculated restitution accordingly, and ordered B.C. to pay $45,703.25. The restitution award, therefore, bears a reasonable relationship to the economic loss B.C. caused the victims—the costs incurred in replacing the gym floor. *See William L.*, 211 Ariz. at 239, ¶ 10.

¶14        B.C. has not established the superior court abused its discretion in calculating the restitution award. The superior court heard the conflicting testimony and implicitly found more credible the testimony from Sun Country, the District, and the Trust. *See Action No. JV-132905*, 186 Ariz. at 609. The evidence supports the superior court's finding the gym floor had to be replaced because of the extent of the damage B.C. and the other three caused. *See William L.*, 211 Ariz. at 241, ¶ 17. The reasonable cost for replacement was $182,813.00. An award of that amount was necessary to make the School and the Trust whole. *See id.* The superior court reasonably allocated one fourth of that amount to B.C.

## CONCLUSION

¶15        Based on the above, this court affirms the superior court's restitution award.