NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE KADEN V.

No. 1 CA-JV 20-0065
FILED 8-11-2020

Appeal from the Superior Court in Yavapai County
No.  P1300JV201900104
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Yavapai County Attorney's Office, Prescott
By Danalyn Savage
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Cynthia J. Bailey joined.

---

**H O W E**, Judge:

¶1 Kaden Vermilyea ("Kaden") appeals the juvenile court's order imposing restitution. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 In February 2019, a Chino Valley High School campus security officer discovered that oil had been poured on the school's gym floor. Shortly thereafter, Kaden was apprehended and charged with one count of third-degree burglary and one count of aggravated criminal damage.

¶3 Following an advisory hearing, the juvenile court found Kaden delinquent after he admitted having committed solicitation to commit burglary, a class 6 undesignated felony. The court placed Kaden on supervised probation and set a restitution hearing.

¶4 At the restitution hearing, the school's maintenance supervisor testified that he and the maintenance staff first attempted to clean the gym floor with a squeegee and rags. The District Maintenance Manger then "took over the lead" and attempted to clean the floor with an "auto scrubber" and a "neutral floor cleaner" but only made "minimal progress." As their last option, the maintenance staff tried using dish soap to remove the oil residue but were unsuccessful.

¶5 The school administration then made a claim with the Arizona School Risk Retention Trust and contacted Sun Country Flooring. Taft Smithson, a sports floor specialist from Sun Country Flooring, inspected the gym floor and concluded that it needed to be sanded and refinished because the "coefficient of friction . . . had been diminished in some areas." Smithson also testified that he had consulted with two other industry professionals who agreed that the floor needed to be sanded and refinished.

**¶6** While the floor was being sanded, Smithson discovered that the oil was more widespread than he imagined and that it had seeped into the lower layers of plywood. Each day, Smithson "saw the oil grow in scope." According to Smithson, no other feasible option existed except to replace the flooring.

**¶7** The floor was subsequently replaced, the bleachers were moved, and an environmental firm conducted an asbestos study. According to a senior property adjuster, the project cost $182,813 and the high school paid a $1,000 deductible.

**¶8** Floyd Shelton of Arizona Gym Floors also testified as an expert at the hearing. He examined a 4-foot by 4-foot square piece of flooring from the school and made a sample of similar thickness and width. He then poured oil on the sample and did "some testing" on it. He opined that the gym floor need not have been replaced and that he would have recommended using "mineral spirits" to dilute the oil. He also testified that he had recommended using mineral spirits for oil spills to schools in Flagstaff and that "it worked perfectly."

**¶9** The court noted concerns regarding Shelton's credibility and found that his experiments were "of no value" because he conducted them on a piece of flooring that he manufactured himself instead of the actual flooring he obtained from the school. It also noted that the oil was throughout the gym and that "it would not have been possible to just cut out those specific sections." It therefore found that the claim of $182,813 in restitution was reasonable and ordered Kaden and his three accomplices each responsible for $45,703.25. Kaden timely appealed the restitution order.

## DISCUSSION

**¶10** Kaden contends that the juvenile court erred by ordering restitution in the amount of $45,703.25. We will not disturb a juvenile court's order of restitution in a delinquency proceeding absent an abuse of discretion. *See In re Erika V.*, 194 Ariz. 399, 400 ¶ 2 (App. 1999). "The court abuses its discretion when it makes an error of law in reaching a discretionary conclusion or 'when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence to support the decision.'" *Michaelson v. Garr*, 234 Ariz. 542, 544 ¶ 5 (App. 2014) (quoting *Mahar v. Acuna*, 230 Ariz. 530, 534 ¶ 14 (App. 2012)). "We will not reweigh evidence, but look only to determine if there

is sufficient evidence to sustain the juvenile court's ruling." *In re Andrew A.*, 203 Ariz. 585, 587 ¶ 9 (App. 2002).

**¶11**        Once a juvenile is adjudicated delinquent, the court must order him to make a full or partial restitution to the victim. A.R.S. § 8–344(A); *see also In re Stephanie B.*, 204 Ariz. 466, 470 ¶ 16 (App. 2003). The court may set restitution in an amount necessary to make the victim whole. *See In re Andrew C.*, 215 Ariz. 366, 368 ¶ 9 (App. 2007). "To ensure that the victim is made whole, the court has broad discretion in setting the restitution amount based on the facts of the case." *In re William L.*, 211 Ariz. 236, 239 ¶ 12 (App. 2005). Although generally the court uses the fair market value of the property at the time of the loss to measure restitution, when fair market value will not make the victim whole, the court has the discretion to use other measures. *Id.* at 240 ¶ 15.

**¶12**        Here, the senior property adjuster testified that he carefully reviewed the entire claim file, inspected the gym, and spoke with contractors, subcontractors, and experts about the damage. Following his analysis, he determined that the total cost for replacing the gym floor was $182,813. Thus, sufficient evidence was presented to support the restitution amount ordered by the juvenile court.

**¶13**        Citing Shelton's testimony, Kaden argues that the juvenile court should have limited restitution to the cost of dissipating the oil with mineral spirits. But this argument amounts to a request that this Court reweigh the evidence. In addition to Shelton's testimony, Smithson testified that replacing the gym floor was the most feasible option. He also testified that he was not familiar with pulling oil through mineral spirits as a method used "anywhere in the industry." The juvenile court considered the strengths and weakness of the experts' positions and was in the best position to judge their credibility. *See State v. Estrada,* 209 Ariz. 287, 292 ¶ 22 (App. 2004). The court thus did not abuse its discretion in the restitution award.

**CONCLUSION**

**¶14**        For the foregoing reasons, we affirm.

