NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE JOSEPH L.

No. 1 CA-JV 20-0367
FILED 6-22-2021

Appeal from the Superior Court in Maricopa County
No. JV205175
The Honorable Melody Harmon, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Phoenix
By Aaron Jason Max
*Counsel for Appellant*

Maricopa County Attorney's Office, Phoenix
By Robert E. Prather
*Counsel for Appellee*

---

**OPINION**

---

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Randall M. Howe and Judge Maria Elena Cruz joined.

---

**P E R K I N S**, Judge:

**¶1**          Joseph L. challenges the juvenile court's order directing him to pay $9,600 in lost wages to the victim's mother as restitution. Because Joseph L.'s delinquent conduct directly caused the lost wages, we affirm the restitution order.

## FACTUAL AND PROCEDURAL BACKGROUND

**¶2**          "We view the facts in the light most favorable to affirming the findings of the superior court." *In re Daniel A.*, 210 Ariz. 162, 164, ¶ 2 (App. 2005). In February 2019, Joseph followed a 16-year-old girl into a bathroom in her home. He locked the door, covered her mouth, and told her that no one would hear her screams. He then touched her breasts and vagina and forced her to touch his penis, all without her consent. The State petitioned to have Joseph adjudicated delinquent, in May 2019, of kidnapping and four counts of sexual abuse. He pled delinquent to attempted sexual abuse in January 2020 and agreed to pay "all victims" up to $10,000.

**¶3**          The victim had no symptoms of mental illness or trauma before the offense. But in the following months, she made several suicide attempts and engaged in self-harm. Her psychologist diagnosed her with post-traumatic stress disorder, and she underwent multiple forms of therapy. Her trauma escalated in May 2019 after police interviewed her about the incident.

**¶4**          Days after the State filed its delinquency petition against Joseph, the victim experienced a psychotic episode while home alone that required a police response. The victim's mother ("Mother") left work to address the emergency and her employer fired her for being absent.

**¶5**          Because the victim attempted suicide multiple times while alone, Mother chose to stay home to ensure the victim's safety and well-being. At the restitution hearing, Mother described being terrified to leave the victim home alone: "every time I left home, my daughter tried to harm

herself." Mother then described how traumatic it felt to "come home from work and your kiddo's laying against the wall with her wrists cut." Mother acknowledged that no medical professional ordered her to stay home, but she also stated that someone suggested she stay with the victim to avoid any self-harm. The victim also required multiple hospitalizations. One hospital conditioned her release on Mother's having a safety plan and not leaving the victim unattended.

¶6            Mother remained unemployed for nine months. She eventually began a food delivery job that allowed her to bring the victim with her during work. Mother calculated her lost wages at $9,600 by multiplying her lowest paycheck from her prior job with the number of weeks she was unemployed. Mother supported her testimony with her verified victim statement of financial loss, a letter from her former employer, and bank statements showing her earnings from her prior employment.

¶7            The juvenile court ordered Joseph to pay $9,927.58 in restitution, which included $9,600 for Mother's lost wages. Joseph timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and 8-235(A).

## DISCUSSION

¶8            The sole issue on appeal is whether the juvenile court may award Mother restitution for lost wages stemming from her termination and decision to remain unemployed. Joseph argues the $9,600 awarded for Mother's lost wages are consequential damages, rendering them irrecoverable.

¶9            The Victims' Bill of Rights protects a victim's right to receive restitution from criminal defendants. Ariz. Const. art. 2, § 2.1(A)(8). The VBR authorized the legislature to extend this right to victims of delinquent acts, *id.* at (A)(12)(D), which it has done. *See* A.R.S. § 8-323(F)(9). Restitution should restore victims to their economic position before the delinquent act occurred. *See In re William L.*, 211 Ariz. 236, 239, ¶ 11 (App. 2005). The juvenile court has broad discretion in awarding restitution to make victims whole. *Id.* at ¶ 12. We review such awards for an abuse of discretion, but review issues of statutory interpretation *de novo*. *See In re Richard B.*, 216 Ariz. 127, 130, ¶ 12 (App. 2007); *see also Thomas v. Thomas*, 203 Ariz. 34, 36, ¶ 7 (App. 2002).

¶10           The legislature authorized the juvenile court to order a juvenile to pay restitution to "*any person* who suffered an economic loss as

the result of the juvenile's conduct." A.R.S. § 8-323(F)(9) (emphasis added). Notably, this broad grant of authority to the juvenile court contrasts with the superior court's authority to award restitution in criminal cases. The legislature restricted criminal restitution awards to the victim or a deceased victim's immediate family. A.R.S. § 13-603(C). Only when the court has imposed a fine can it "order that all or any portion of the fine imposed be allocated as restitution to be paid by the defendant to *any person* who suffered an economic loss caused by the defendant's conduct." A.R.S. § 13-804(A) (emphasis added).

¶11 The criminal code defines economic loss as "any loss incurred by a person as a result of the commission of an offense" and "includes lost interest, lost earnings and other losses that would not have been incurred but for the offense." A.R.S. § 13-105(16). Economic loss does not include "damages for pain and suffering, punitive damages or consequential damages." *Id.* And claimants must prove their restitution claims by a preponderance of the evidence. *In re Stephanie B.*, 204 Ariz. 466, 470, ¶ 15 (App. 2003).

¶12 The juvenile's delinquent conduct must also be the "but for" cause of the economic loss. *See State v. Wilkinson*, 202 Ariz. 27, 29, ¶ 7 (2002). Neither the juvenile nor criminal statutes define "consequential damages." Consequential damages are damages that do not directly result from a juvenile's delinquent conduct. *See William L.*, 211 Ariz. at 239, ¶ 13. In *State v. Pearce*, the defendant stole equipment the victim leased to him. 156 Ariz. 287, 287 (App. 1988). We held the victim could not recover lost profits considered by the lease agreement because those damages did not "flow" from the defendant's criminal acts. *Id.* at 289. In contrast, we upheld a restitution award to a homicide victim's brother for 22 days' worth of annual leave from work. *State v. Lapan*, 249 Ariz. 540, 550–51, ¶¶ 30–37 (App. 2020). The 22 days of leave included "days of work he missed as a result of [the victim's] death, the investigation, and [the defendant's] trial and sentencing." *Id.* at 550, ¶ 30.

¶13 Joseph argues Mother is seeking repayment for her decision not to work for nine months. He thus concludes Mother's restitution claim does not directly flow from his delinquent act. We disagree. The record supports the juvenile court's finding that Mother's termination and her later decision not to seek other employment flowed directly from Joseph's delinquent conduct. *See Wilkinson*, 202 Ariz. at 29, ¶ 7. Joseph's conduct led to the victim's post-traumatic stress disorder, self-harm, and suicide attempts. Mother described finding the victim at home with her wrists cut. Joseph's conduct also led to the psychotic episode that required Mother's

4

immediate response and ultimately led to her termination. And Mother's need to continually supervise the victim, who had no history of mental illness, would have been unnecessary but for Joseph's conduct. We thus hold that Mother's lost wages are not consequential damages, and the juvenile court did not abuse its discretion by awarding Mother restitution for those lost wages.

¶14     A parent's decision to forgo employment may not always be directly attributable to a juvenile's delinquent conduct. But sufficient record evidence supports the causal relationship between Joseph's conduct and Mother's need to ensure the victim's safety. Mother's decision to not seek reemployment resulted from the emotional and psychological damage that Joseph inflicted on her daughter. And the restitution award ordered by the juvenile court will return Mother to her economic position before Joseph's conduct occurred. *See William L.*, 211 Ariz. at 239, ¶ 11.

## CONCLUSION

¶15     We affirm the juvenile court's $9,927.58 restitution award.

