NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE COLSON D.

No. 1 CA-JV 20-0399
FILED 6-29-2021

Appeal from the Superior Court in Maricopa County
No. JV604854
The Honorable Cynthia L. Gialketsis, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

The Law Offices of Kevin Breger, Scottsdale
By Kevin Breger
*Counsel for Appellant*

Maricopa County Attorney's Office, Phoenix
By Faith Cheree Klepper
*Counsel for Appellee*

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which
Presiding Judge D. Steven Williams and Judge Jennifer B. Campbell joined.

**M O R S E**, Judge:

¶1        Colson D. appeals an order to pay $10,102.11 in combined restitution to five victims.[1]  For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Over four nights in April 2019, then seventeen-year-old Colson drove some friends through various Queen Creek neighborhoods, where they egged, kicked, or shot a BB gun at property owned by approximately 150 victims.

¶3        The mayhem began the night of April 18, when Colson and two friends targeted a classmate who "had snitched" on their friends at school.  Colson testified they "egged [the classmate's] car" and "shot out his driver's side window" with a BB gun.  One of Colson's passengers shot out another car's rear window as they were leaving the neighborhood.  Colson told police they threw the remaining eggs at random vehicles.

¶4        The friends reconvened on April 21 to shoot BBs at random vehicles while driving around in Colson's car.  They purchased eggs and two additional BB guns on April 22 in preparation for a third night.  The boys continued their antics during a fourth night on April 23.  Police arrested Colson and one of his passengers on April 25.

¶5        Colson pled delinquent to one count of criminal damage.  In his plea agreement, Colson stipulated "to pay restitution to all victims, for all economic loss, as described in" 145 Maricopa County Sheriff's Office incident reports, and agreed to pay $1,806.14 in combined restitution to three named victims.

¶6        The juvenile court held a restitution hearing in October 2020.  Colson stipulated to $4,444.08 in combined restitution for twelve more victims.  The court then heard testimony regarding the contested claims of C.V., A.M., J.J., D.Q., and Progressive Insurance (collectively, "the Five Victims").

¶7        C.V. testified that footprint-shaped dents had been kicked into the side of her Mitsubishi Lancer.  The emotional stress from the damage prompted her to visit a cardiologist, causing her to miss three days

---

[1]        The restitution order is joint and several with Colson's codefendant, who is not a party to this appeal.

of work. A.M. testified that his Honda Civic had similarly been dented by footprints, "like someone pushed the car with their foot." Colson acknowledged that surveillance footage showed him and his codefendant kicking a Fiat. But he claimed he only kicked the Fiat and denied kicking a Mitsubishi Lancer or Honda Civic. The court awarded restitution of $5,133.59 to C.V., including $996.17 for medical expenses and $600 for lost wages. The court awarded A.M. $1,030.50 in restitution.

¶8 J.J. testified that his vehicle sustained a shattered rear window, scratches, paint defects, and a BB hole in its fender. The court awarded $139.50 in restitution.

¶9 D.Q. testified that the front of his house—including the fascia and garage door—had been egged, along with two vehicles. Although D.Q. estimated that only fifteen-to-twenty percent of the front portion of his house had sustained egg damage, he testified that he "couldn't paint just part of the house; the whole house had to be painted." Colson denied egging anyone's home. The court awarded $2,180 in restitution to D.Q., including $2,000 for painting the house and $180 detailing the vehicles.

¶10 A representative of Progressive Insurance testified that an employee's Progressive-branded work vehicle had been egged, resulting in paint defects. Colson did not remember egging a vehicle with "Progressive" on its side. The court awarded $1,618.52 in restitution.

¶11 Colson timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-325(A), 12-120.21(A)(1), and Ariz. R.P. Juv. Ct. 103(A).

## DISCUSSION

¶12 When a juvenile has been adjudicated delinquent, the court "shall order the juvenile to make full or partial restitution to the victim of the offense . . . ." A.R.S. § 8-344(A). Restitution is proper for losses that "(1) are economic, (2) would not have occurred but for the juvenile's delinquent conduct, and (3) are directly caused by the delinquent conduct (e.g. not consequential damages)." *In re Andrew C.*, 215 Ariz. 366, 368, ¶ 9 (App. 2007). We review a restitution determination for an abuse of discretion. *In re William L.*, 211 Ariz. 236, 239, ¶ 10 (App. 2005).

### A.     Evidence of Causation.

¶13 Colson argues there was insufficient evidence that he or his codefendant caused the Five Victims' economic loss. This argument fails because Colson conceded responsibility for the property damage when he

pled delinquent and stipulated to pay "restitution to all victims, for all economic loss, as described in" 145 incident reports referenced within his plea agreement.[2] *See Hoffman v. Chandler ex rel. County of Pima*, 231 Ariz. 362, 365, ¶ 17 (2013) (noting that restitution was entered pursuant to a plea agreement even when the defendant contested the amount of restitution). The incident reports of the Five Victims were among those referenced, and they document damage caused by kicking, egging, or shooting property.[3] Thus, the record contains evidence that "reasonably leads to the inference that [the] juvenile's criminal conduct was related to [the] victim's damages." *See Maricopa Cnty. Juv. Action No. JV-132905*, 186 Ariz. 607, 609 (App. 1996) (finding sufficient evidence to infer the juvenile caused damage to a stolen car where the juvenile admitted stealing the car, stipulated to restitution for losses relative to his criminal conduct, and the victim documented car damage). Colson fails to show the restitution awards lack "a reasonable relationship" to the Five Victim's economic loss. *See William L.*, 211 Ariz. at 239, ¶ 10 (noting appellate courts "will uphold the amount of restitution if it bears a reasonable relationship to the victim's loss.").

### B.     D.Q.'s Restitution Award.

**¶14**     Colson claims the juvenile court made D.Q. "more than whole" by awarding restitution for painting his entire house, despite D.Q.'s testimony that only fifteen-to-twenty percent of "the front portion" had sustained egg damage.

**¶15**     "Arizona permits restitution 'for a wide variety of expenses,' so long as those expenses flow directly from the defendant's criminal conduct." *State v. Quijada*, 246 Ariz. 356, 369, ¶ 43 (App. 2019) (quoting *State v. Baltzell*, 175 Ariz. 437, 439 (App. 1992)). Trial courts possess "broad discretion in setting the restitution amount based on the facts of the case," but "may not order restitution that would make the victim more than

---

[2]     Colson maintains that his plea agreement "remains steadfast," and does not challenge its terms on appeal.

[3]     Although Colson denied egging anyone's home, kicking a Mitsubishi Lancer or Honda Civic, and could not recall damaging a Progressive-branded vehicle, the juvenile court was not obligated to credit Colson's testimony. *See In re Andrew A.*, 203 Ariz. 585, 587, ¶ 9 (App. 2002) ("While [the] juvenile denied that he stole the vehicle . . . and denied stealing the victim's personal property, the trial court could have nonetheless properly inferred otherwise.").

whole." *William L.*, 211 Ariz. at 239, ¶ 12.  A court may award restitution for expenses that are "incurred 'in an effort to restore the victim's equanimity' following the criminal offense." *Quijada*, 246 Ariz. at 369, ¶ 44 (quoting *State v. Brady*, 169 Ariz. 447, 448 (App. 1991)).

**¶16**        D.Q. testified that he "couldn't just paint the garage door and . . . the front of the house, so the whole house was painted."  Colson fails to argue that painting the entire house was not part of an effort to restore D.Q.'s equanimity.  Thus, Colson fails to show the restitution award made D.Q. more than whole.

**CONCLUSION**

**¶17**        We affirm the juvenile court's order.



AMY M. WOOD • Clerk of the Court
FILED:     AA