NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TAVA R., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, T.R., *Appellees.*

No. 1 CA-JV 21-0211
FILED 2-17-2022

Appeal from the Superior Court in Maricopa County
No. JD532186
The Honorable Connie Contes, Judge, *Retired*

**AFFIRMED**

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn L. Spritzer
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Michael J. Brown joined.

---

**F U R U Y A**, Judge:

¶1        Tava R. ("Mother") appeals the juvenile court's order terminating her parental rights to her child. We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In December 2018, a relative petitioned for a dependency, alleging Mother was mentally unstable, violent, and abusing amphetamines and alcohol.[1] Finally, the petition alleged Mother was unemployed and had no means to support T.R.

¶3        Soon afterwards, T.R.'s guardian ad litem ("GAL") and, at a subsequent hearing, the juvenile court, reviewed photographs and audio recordings indicating Mother had abused T.R. The court found "direct evidence of abuse" and ordered the Department of Child Safety ("DCS") to remove the child. DCS eventually placed T.R. in a kinship placement and substituted as petitioner in the dependency, alleging Mother had abused and neglected the child. The court then ordered Mother to complete a drug test, but she did not do so.

¶4        Meanwhile, soon after T.R.'s removal, Mother insisted to DCS and the police that the child was being sexually abused. During visits, Mother continually checked T.R.'s anal area and took photographs of his genital and anal areas. Based on her claims of abuse, T.R. underwent a forensic interview and a forensic medical exam, neither of which yielded evidence of sexual abuse. Nonetheless, Mother continued to insist T.R. was being sexually abused and continued to examine his genital and anal areas during visits. Moreover, Mother demonstrated hostile behavior in front of T.R. and threatened to kill family members, DCS employees, and security guards in front of the child. Police repeatedly escorted her out of the visitation center, leading DCS to ask the court to suspend visits.

---

[1]       The juvenile court terminated T.R.'s alleged father's parental rights, and he did not appeal.

¶5 In May 2019, the court adjudicated T.R. dependent and suspended Mother's in-person visits but ordered DCS to provide her with telephonic visits. A week after the court's ruling, Mother created a forged court order purporting to return T.R. to her custody, which she presented to police and T.R.'s placement. At a following hearing, the court set the case plan as family reunification and again ordered Mother to participate in a drug test. Around this time, Mother began receiving medication-management services after reporting to the provider that she had attention-deficit hyperactivity disorder ("ADHD"); the provider prescribed Mother two amphetamines.

¶6 Four months later, Mother completed a psychological evaluation. The psychologist observed Mother's thoughts "fixate[d] on her child being harmed in the past and in ongoing imminent danger although she was largely unable to articulate any coherent support for either belief." He noted Mother had limited insight and judgment and diagnosed her with an unspecified schizophrenia spectrum or other psychotic disorder and unspecified stimulant and alcohol disorders. The psychologist also provisionally diagnosed Mother with post-traumatic stress disorder and a personality disorder. He noted his evaluation did not support Mother's ADHD diagnosis, and her amphetamine prescriptions were therefore very concerning because they could exacerbate her psychotic disorder.

¶7 The psychologist opined T.R. was at a high risk of abuse or neglect if placed in Mother's care, and he gave Mother a very guarded prognosis of her ability to parent in the foreseeable future. He recommended Mother receive consistent medication management, an evaluation for psychiatric treatment including a serious mental illness ("SMI") evaluation, cognitive-behavioral therapy, and substance-abuse testing and treatment.

¶8 A few weeks later, Mother engaged a different psychologist who performed a second psychological evaluation. During the evaluation, Mother denied having any psychiatric issues besides ADHD and denied any substance abuse. The psychologist observed Mother as "abrasive and challenging" and noted that reconciling the discrepancy between what Mother and DCS had reported to him was difficult. He diagnosed Mother with an adjustment disorder with mixed disturbance of emotions and conduct, narcissistic and histrionic personality features, and ADHD "per records." The psychologist concluded that stress from T.R.'s removal had "greatly impacted [Mother's] psychological functioning and her interpersonal behavior," and that she "is capable and fit to parent her child at this time" but could benefit from individual therapy.

3

¶9 DCS then referred Mother for a psychiatric evaluation and cognitive-behavioral therapy and renewed her referral for drug testing. The psychiatrist diagnosed Mother with an adjustment disorder with mixed anxiety and depressed mood and ADHD. In early 2020, Mother completed six drug tests; each returned positive for various levels of amphetamine, leading DCS to report that she was not taking her medication as prescribed. Afterwards, Mother stopped drug testing altogether. Additionally, Mother quit cognitive-behavioral therapy after attending only three sessions.

¶10 The court then changed the case plan to termination and adoption, and DCS moved to terminate Mother's parental rights based on abuse, mental illness, and fifteen months' time in out-of-home placement grounds. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(2)–(3), (B)(8)(c).

¶11 Around this same time, Mother resumed therapy and attended for the next five months. Although her therapist recommended an SMI evaluation, Mother refused. Additionally, during various meetings, Mother displayed "mani[a]," "distorted thinking patterns," and "paranoid thoughts and delusional thinking." The therapist reported that Mother made "little to no progress" during therapy, was "not [] open to clinical recommendations," and "struggle[d] to accurately perceive reality." Mother stopped attending therapy in October 2020. Although DCS referred Mother for a third psychological evaluation, she declined to participate.

¶12 Mother's erratic behaviors continued. That same month, she went to placement's home in violation of a no-contact order and banged on the doors and windows, demanding to see T.R. Additionally, although she continued virtual visits with T.R. through placement, she visited inconsistently and displayed inappropriate behaviors during visits.

¶13 Mother stopped communicating with DCS, and never provided proof of consistent housing or employment. After a hearing, the court terminated Mother's parental rights on all grounds alleged, and she timely appealed. We have jurisdiction pursuant to A.R.S. § 8-235(A) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶14 On appeal, Mother argues the court relied upon impermissible and insufficient evidence to support its termination order.

¶15 A parent's right to custody and control of their own child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49, ¶¶ 11–12 (2000). Termination of a parental relationship

may be warranted where the state proves one statutory ground under A.R.S. § 8-533 by "clear and convincing evidence." *Id.* "Clear and convincing" means the grounds for termination are "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284–85, ¶ 25 (2005). The court must also find that termination is in the child's best interests by a preponderance of the evidence. *Id.* at 288, ¶ 41.

**¶16**     We "will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a [termination] order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We do not reweigh the evidence, but "look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

**¶17**     The court may terminate parental rights when a parent is "unable to discharge parental responsibilities because of mental illness" and "there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3).

**¶18**     Mother first argues that the court's order rests upon inadmissible and irrelevant evidence because it relied on factual findings from previous hearings made under a lower burden of proof.[2]

**¶19**     In its final order, the court stated that on three previous occasions it had found direct evidence of physical abuse. Contrary to Mother's contention, however, the court did not rely solely on its recitation of previous abuse findings to terminate her rights. Indeed, the court's order also states that after a four-day contested hearing, it "heard, considered, and weighed all of the testimony and . . . exhibits" and made its findings "[b]ased upon th[e] evidence."

**¶20**     The court determined that the evidence met the clear and convincing standard and included "color photographs of red marks and welts on the child's lower back and chest area," "audio files with sounds of hitting and the child screaming in fear and/or pain and the child's statements of the mother hitting and hurting him," "Mother's admissions in the recordings of abusing the child claiming that she 'hit the child because he hit her first,'" and Mother's "testimony that she struck her child

---

[2]     Although this argument pertains mainly to the abuse ground, we address it here to the extent those findings also support the mental-illness ground.

on one occasion." The photographs and audio files admitted at the termination trial support the court's findings. Thus, the court did not need to rely on prior findings because it had sufficient evidence before it as part of the termination trial. *See In re William L.*, 211 Ariz. 236, 238, ¶ 7 (App. 2005) (explaining superior courts are presumed to know and follow the law).

¶21　　　　Mother next argues that "plausible alternative explanations exist for *both* the abuse and mental health allegations," pointing to her testimony that her statements on the audio tapes were merely sarcasm and her "family was out to destroy her relationship with" the child. Mother's arguments are not availing because the court carefully considered her testimony on these points. Contrary to Mother's characterizations, the court determined the photographs and audio recordings and Mother's testimony in prior hearings contradicted her statements and "clearly indicated that [she] was not being truthful in her testimony." *See Moore v. Title Ins. Co. of Minn.*, 148 Ariz. 408, 413 (App. 1985) ("A finding of fact cannot be clearly erroneous if there is substantial evidence to support it, even though there might be substantial conflicting evidence.") (internal quotation marks omitted).

¶22　　　　Mother also generally argues that insufficient evidence supports the court's order terminating her rights based on mental illness. The court found Mother has a substantial history of erratic and histrionic behaviors, including forging court documents to have T.R. returned to her. The court also found Mother had accused multiple people of sexually assaulting T.R., causing him to undergo a forensic exam that turned up no evidence of abuse. Finally, the court found Mother participated minimally in drug testing and mental-health services, and when she did drug test, the results suggested she was misusing her prescriptions, which could exacerbate her mental illness. These findings are supported by substantial evidence in the record.

¶23　　　　The court's findings are further supported by the report and testimony of Mother's first evaluating psychologist who described psychotic disorders as characterized by "significant irrational, circumstantial, paranoid, and persecutory thinking and related extreme behavioral acting out." He testified Mother's condition was "[e]xtremely dangerous" for T.R. because, when thinking irrationally, she did not realize her actions were unsafe. The psychologist opined that if left untreated, Mother's condition would not resolve on its own and recommended against returning T.R. to her care.

**¶24** Nonetheless, Mother argues DCS and the court ignored the more favorable findings of the second psychologist, who testified that her behavior was driven by fear and anxiety over being separated from T.R. Nothing in the record suggests the court ignored this evidence. On the contrary, the record demonstrates the court considered both psychological evaluations and heard testimony from each psychologist. Ultimately, the court found the first psychologist's assessment more persuasive, and we will not reweigh that evidence on appeal. *Jesus M.*, 203 Ariz. at 282, ¶ 12 (citation omitted). Moreover, regardless of Mother's specific diagnosis, the record is replete with examples of her erratic and unstable behaviors, which were observed by numerous individuals throughout the dependency.

**¶25** Finally, Mother challenges the court's finding that her having seven attorneys during the dependency demonstrated her instability and erratic behavior. Even assuming this finding is error, other substantial evidence in the record supports the court's order terminating Mother's parental rights based upon mental illness.[3]

## CONCLUSION

**¶26** For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:     AA

---

[3] Because we affirm the termination order under the mental-illness ground, we need not address Mother's arguments regarding the abuse or fifteen months' out-of-home placement grounds. *See Id.* at 280, ¶ 3.